## Case No. 16,571.

UNITED STATES v. TWENTY-SIX CASES OF RUBBER BOOTS.

[1 Cliff. 580.] [1]

Circuit Court, D. Massachusetts. May, 1860.[2]

CUSTOMS DUTIES—FORFEITURES FOR UNDERVALUATION—IMPORTATIONS BY MANUFACTURER—AFFIDAVIT OF COST.

1. It is very doubtful if the sixty-sixth section of the act of March 2, 1799 [1 Stat. 677], ever

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirming Case No. 16,570.]

had any application to a case of importation and entry made by the manufacturer and producer, as such.

2. By subsequent acts the basis of dutiable valuation has been changed from the actual cost to the actual market value or wholesale price.

3. Persons who have purchased the goods, and have the means of knowing the cost, are still required to make oath that their invoices contain a true and faithful account of the actual cost; but this is not now applicable to the manufacturer, who is not supposed to have the means of knowledge to enable him to do so.

4. By the act of March 1, 1823 [3 Stat. 729], provision is made for the importation of goods by the manufacturer, and the form of oath to be taken in such cases is there prescribed. It also makes discrimination between goods procured by purchase and such as are procured otherwise.

5. By this act the sixty-sixth section of the act of March 2, 1799, so far as relates to importations by the manufacturer, if it ever had any application to that case, is repealed.

[In error to the district court of the United States for the district of Massachusetts.]

The original suit was commenced February 24, 1857, and was an information framed on the sixty-sixth section of the act of March 2, 1799, filed by the district attorney, to enforce a forfeiture of twenty-six cases of rubber boots, imported from Canada into the United States at Rouse's Point, and there entered for warehousing and transportation to Boston. After being transported to Boston, they were seized on land by the collector of the port. The entry was made by and for certain persons under the name and style of Cheney, Fisk, & Co., and was duly signed on the 29th of January, 1857, at the office of the deputy collector, and an invoice of the goods was produced and left with the deputy collector. It was alleged that the goods included in the entry were invoiced at a less price than the actual price at the place of exportation. Certain issues of fact were tendered by the claimants in the first instance, but subsequently they presented a plea in bar of the information, which was filed by consent. The plea set up that the United States ought not to maintain the information, because the claimants were the manufacturers and producers of the goods, and that the goods were imported by them as such. To this the district attorney demurred, and the court overruled the demurrer. [Case No. 16,570.]

C. L. Woodbury, U. S. Dist. Atty.

Nowhere is the sixty-sixth section of the act of 1799 repealed in words. It is still in force. Wood v. U. S., 16 Pet. [41 U. S.] 343; Clifton v. U. S., 4 How. [45 U. S.] 250; Buckly v. U. S., 4 How. [45 U. S.] 251; U. S. v. Sixty-Seven Packages, 17 How. [58 U. S.] 92. The suggestion of an implied repeal rests on the comparison of the words "actual cost" and "fair market value." The "actual cost" in section 66, Act 1799, is not the original or prime payment. It says, "shall not be invoiced according to the actual cost thereof at

the place of importation." Other things must be added afterwards, to make up the document required by the sixty-sixth section. The purpose of the acts of 1818 [3 Stat. 433] and 1823 was to give further security for the correctness of the basis on which the levy of duty depended, namely, the invoice. Also to establish equality in the invoices produced by manufacturers and by purchasers, so that like duties should be paid by each. The sixty-sixth section being still in force, and the invoice still required, can the act of 1823, § 4, be treated as repealing by implication or by inconsistency this clause quoad a manufacturer's invoice. (1) It relates only to the oath on making the entry. (2) He must still enter by invoice. (3) The supreme court have declared all succeeding acts cumulative to this sixty-sixth section. (4) Were all oaths to entries repealed, the sixty-sixth section would be unaffected. (5) If the oath is at all directory or mandatory as to section sixty-six, it should be interpreted to mean, "that such an invoice so sworn should be taken and deemed a sufficient compliance with the sixty-sixth section, provided no fraudulent intent appears." If this is not so, then he is not relieved from the sixty-sixth section. In 1818, the words "true value" were used as a basis for duties; they were held to mean "actual cost." U. S. v. Tappan, 11 Wheat. [24 U. S.] 419. The object of the oath of 1823 is not within the sixty-sixth section; these proceedings relate to the invoice, and are independent of the fact whether an oath is taken or not. The object of the two acts does not relate to the same thing, and there is no necessary repugnancy between them. From these sections it is apparent that two terms of value are used,— "actual cost" and "fair market value,"—and that the invoice of goods entered by the manufacturer must contain the "fair market value," and that he must make solemn oath that it does.

It is held in U. S. v. Sixteen Packages [Case No. 16,303], that the phrase "actual cost," as used in the sixty-sixth section of the act of 1799, refers and is only applicable to cases where the goods have been acquired by purchase in a bona fide transaction between buyer and seller, and means the actual price paid. See, also, Alfonso v. U. S. [Id. 188].

In Belcher v. Lawrason, 21 How. [62 U. S.] 254, the court recognizes the distinction between the purchaser's and the manufacturer's oath.

M. Andros, for claimants.

The thirty-sixth and sixty-sixth sections employ three terms expressive of value,—"actual cost," "prime cost," and "real cost,"—and "they are all phrases of equivalent import, and mean the true and real price paid for the goods upon a genuine bona fide purchase." U. S. v. Sixteen Packages [supra]. Thus the law remained for nearly twenty years, or until the act of April 20, 1818 (3 Stat. 433). The fifth section of this act required inter alia that the owner, &c., should, in addition to the oath now required by law,—that is, in addition to the oath provided for in the thirty-sixth section of the act of 1799,—declare on oath that the invoice produced exhibits the true value of the goods, &c., in their actual state of manufacture at the place from which the same were imported. The eighth section provided that the owner should declare whether he was the manufacturer or not, and if he was, then that he should make oath that the prices charged in the invoice were the current value of the same at the place of manufacture, and such as he would have received if the same had been sold in the usual course of trade. Congress drew a distinction between the oaths to be taken by the manufacturing and the purchasing importer. That there is a positive repugnancy between the provisions of the act of 1823 and the sixty-sixth section of the act of 1799, so that the two cannot as to the present case coexist. Wood v. U. S., 16 Pet. [41 U. S.] 362. To the point of repeal by implication. The fourth section of the act of 1823 provides three forms of oaths, one of which is to be administered according as the person making the entry shall be the consignee, importer, agent, owner, or manufacturer. And this oath it is expressly stated is "in lieu of the oath now prescribed by law," that is, in lieu of the oath prescribed by the acts of 1799 and of 1818. The fifth section provides that the duties shall be assessed upon their actual cost if the goods shall have been actually purchased, and upon their actual value if the goods have been procured otherwise than by purchase. Alfonso v. U. S. [supra].

CLIFFORD, Circuit Justice. Passing over any mere formal objections to the plea in bar, the record presents but two questions for the consideration of the court. It is insisted by the counsel for the claimants that the sixty-sixth section of the act of March 2, 1799, is inapplicable to the facts of this case, as set forth in the plea in bar, and if applicable, that the section is repealed by the fourth section of the act of March 1, 1823. That proposition, which is twofold in its character, is wholly denied by the district attorney, and he insists that the provision in question is in full force, and that it is applicable to importations made by the manufacturer or producer, as well as to those made by the owner where the goods have been actually purchased. No other questions were discussed at the bar, and the inference is a clear one, both from the state of the record and the course of the argument, that the counsel on both sides desire that the decision of the court may turn upon the solution of those questions. Under the circumstances, mere formal defects in the plea, if any, will not be noticed in determining the cause. Regarding the case as one of considerable importance, I think it proper to say in the outset that the questions presented for decision are not unattended with difficulty and perhaps are involved in some doubt.

It is provided by the sixty-sixth section of the act of March 2, 1799, that if any goods, wares, or merchandise, of which entry shall have been made in the office of the collector, shall not be invoiced according to the actual cost thereof at the place of exportation with the design to evade the duties thereupon, or any part thereof, all such goods, wares, and merchandise, or the value thereof, to be recovered of the person making the entry, shall be forfeited. 1 Stat. 677. Whether that clause of the section is repealed or not, so far as respects importations acquired by purchase in the foreign market, is a question which has been twice before the supreme court; but after a careful examination of the respective opinions given by the court in those cases, in connection with the facts on which the decisions were based, I am of the opinion that the supreme court has not decided the questions involved in this record. Wood v. U. S., 16 Pet. [41 U. S.] 357; U. S. v. Sixty-Seven Packages of Dry Goods, 17 How. [58 U. S.] 93. Referring to the case first cited, it will be seen that the only count considered by the court was framed upon the same section as the information in this case; but all the importations, as well as the entries at the custom-house, were made by the purchaser of the goods, and not by the manufacturer or producer. Forfeiture takes place, say the court, in the second case, if the goods described in the invoice are set out under the cost value, with the design stated in the act of congress: and the court add that the object of the act is to prevent frauds upon the revenue in passing goods through the custom-house by means of this device at an undervaluation. Importation and entry, however, in that case, as well as in the former, were made by the purchaser who had the means of presenting the true and genuine invoice. Those cases decide undoubtedly that the provision in question is in full force and unrepealed in all cases where the importation and entry are made by the purchaser, but they do not touch the questions involved in this record. On the contrary, it still remains to be considered whether the provision under consideration ever had any application to a case where the importation and entry were made by the manufacturer or producer, and if so, whether it has not in that respect been repealed. Entry of goods imported by any owner or consignee is required by the thirty-sixth section of the before-mentioned act to be made in writing, with the collector, by such owner or consignee, or in his absence by his agent or factor, within fifteen days after the master's report of the arrival of the vessel. Such entry is required to specify the vessel, the name of the master, the port or place from whence the goods were imported, the particular marks, number, denomination, and prime cost of the goods; and the owner or consignee is also required to produce the original invoice of the same, or other documents received in lieu thereof, or concerning the same in the same state in which they were received, together with the bill of lading. In addition to the foregoing requirements, and some others which need not be noticed, the same section prescribes a form of entry, and provides that the same shall, "as the nature of the case will admit or require, be agreeably to that form," but it also provides that the form shall and may be varied and adapted to any alterations that may be made in the rates of duties. Looking at the language of the section, it is obvious that the form of entry prescribed is not obligatory where, from the nature of the case, it would not speak the truth, and it is expressly provided that it shall be varied whenever alterations are made in the rates of duties on imports. Every such entry made by any importer, consignee, or agent is required to be verified by the oath or affirmation of the person making the same, and the same section also prescribes the form of the oath. According to that form, the importer, consignee, or agent is required to certify, among other things, that the entry contains a just and true account of the goods, and a just and true account of the cost thereof, including charges, and also that the invoice and bill of lading produced are the true, genuine, and only invoice and bill of lading received of the goods, and that both are in the actual state in which they were received. Where the particulars of the goods, however, are unknown, a very different entry and oath are prescribed by the last proviso of the same section. Authority is given to the importer, consignee, or agent in such cases, to make an entry of the goods, which is described therein as one in lieu of the entry before mentioned, and the clause provides that it shall be made and received according to the circumstances of the case, the party making the same declaring upon oath all he knows or believes concerning the qualities and particulars of the goods. 1 Stat. 655, 658. Ad valorem rates of duty upon goods at the place of importation were required by the sixty-first section of the act to be estimated by adding a certain percentage to the entire cost thereof, including outside packages, and all charges and commissions except insurance. Further regulations for the collection of duties on imports were made by the act of April 20, 1818, and by the fifth section of the act every owner, consignee, agent, or importer is required, in addition to the oath previously prescribed by law, to declare on oath that the invoice produced exhibits the true value of the goods in their actual state of manufacture at the place from which the same were imported. Regulations for ascertaining whether or not the owner was the manufacturer of the goods imported was first made by the eighth section of the last-named act, which provides that non-resident owners shall further declare on oath whether they were the manufacturers in whole or in part of the importation, or were concerned directly or indirectly in the profits of any art or trade by which the goods had

been brought to their present state of manufacture, and if so, they are required to make further oath that the prices charged in the invoice are·the current value of the same at the place of manufacture, and such as they would have received if the same had been sold in the usual course of trade. 3 Stat. 435. New and still more important provisions for the collection of duties on imports were made by the act of .March 1, 1823, which is the act relied on by the claimants as repealing the provision on which the information in this case is founded. Id. 329. True invoice of importations is required, by the first section of that act, to be presented to the collector at the time of the entry, and unless that be done the .same section provides in effect that the goods, if subject to ad valorem duty, shall not be admitted to entry, unless the same be admitted in the mode authorized and prescribed in the second section, which has no application to this case. Wrecked goods are saved from the prohibition by a proviso to the first section, and by the twenty-first section goods dam-·aged in the course of the voyage are placed upon the same footing. Collectors are required by the fourth section of the act, in all cases where the goods are imported and entered by invoice, to administer according to the nature of the case one of three oaths therein prescribed to the owner, consignee, or agent, "in lieu of the oath now prescribed by law in such case." Of these, the first form is prescribed for the consignee, importer, or agent, and the second for the owner in cases where the goods have been actually purchased.

1. When the entry is by a consignee, importer, or agent, he or they are required to make oath, among other things, that the invoice and bill of lading are the true and only invoice and bill of lading received of all the goods, for account of any person for whom he or they are authorized to enter the same, and that those documents are in the state in which they were received; that the entry contains a just and true account of the goods according to the invoice and bill of lading; and that, to the best of his or their knowledge and belief, the person therein named as such is the owner of the same, and that the invoice produced exhibits the actual cost of the goods if purchased, or the fair market value of the same if otherwise obtained, at the time and place when and where procured.

2. Where the goods have been actually purchased, and·the owner makes the entry, he is required in all cases to make oath that the entry contains a just and true account of all the goods, and that the invoice produced contains a just and faithful account of the actual cost of ˙the same, and of all charges thereon which are particularly specified in the form of the oath. Both of the preceding oaths, it will be seen, have respect to ˙the nature of the case, and were evidently framed so as to avoid any necessity for ˙false swearing, but at the same time to .elicit all

the material facts within the knowledge of the affiants.

3. Those remarks indeed apply to all the previous legislation upon the subject, and the intention of congress in that behalf is equally well exemplified in the third form prescribed in the same section. That form of oath applies when the entry is made by the manufacturer or by the owner, in cases where the goods have been procured otherwise than by actual purchase. Such parties are required to make oath that the entry contains a just and true account of the goods imported, and that the same were not actually bought by the person making the entry or his agent in the ordinary mode of bargain and sale, but that, nevertheless, the invoice produced contains a just and faithful account of the same at their fair market value, including charges. Unmistakable discrimination is also made in the fifth section of the act between goods actually purchased and such as are procured otherwise than by purchase, in the mode there prescribed for estimating ad valorem duties. Actual cost, actual value, and appraised value are severally recognized as a basis of the calculation. Duties were levied upon the invoice and entry in the preceding acts, and that is true of the act under consideration, except when the collector is of the opinion that there is just ground to suspect that the goods are invoiced below their true value in the place from whence imported, and in that event the collector is required, by the thirteenth section of the act, to direct the same to be appraised, and if the appraised value exceeds by twenty-five per cent. the invoice prices, then, in addition to the per centum laid upon correct and regular invoices, under the fifth section of the act, he is required to add fifty per centum on the appraised value. Unless appraised, therefore, goods actually purchased were valued at the actual cost, as specified in the invoice, and goods procured otherwise than by purchase were estimated, subject to the same qualification, at the actual or fair market value, as specified in the same document; but if either class was directed to be appraised under the thirteenth section of the act, then the goods were estimated at the appraised value. These explanations are sufficient to show the correctness of the remark, that actual cost, actual or fair market value, and appraised value are severally, according to the nature of the case, recognized by that act as a basis of dutiable valuation.

Additional regulations upon the subject were made by the act of May 28, 1830 (4 Stat. 409); and by the seventh section of the act of July 14, 1832 (Id. 591). It is made the duty of the collector, in all cases where an ad valorem rate of duty is imposed on any goods, to cause the actual value thereof at the time˙ purchased, and place from which imported, to be appraised, estimated, and ascertained; and it is made the duty of the

appraisers, by all the reasonable ways and means in their power, to ascertain, estimate, and appraise the true and actual value of such goods, any invoice or affidavit to the contrary, notwithstanding. All duties were required to be paid in cash, by the twelfth section of the act of August 30, 1842 (5 Stat. 563), and in all cases where any ad valorem rate of duty was imposed, it is made the duty of the collector, by the sixteenth section of the act, to cause the actual market value or wholesale price of the goods, at the time when purchased, in the principal markets of the country from whence imported, to be appraised, estimated, and ascertained. Cost and charges are to be added to such value or price; and in that mode the collector is directed to estimate the dutiable value of the importation "as the true value at the port where the same may be entered, upon which the duties shall be assessed." Where the cost or value given in the invoice is too low, the owner, consignee, or agent is allowed, by the eighth section of the act of July 30, 1846 (9 Stat. 43), to make such addition thereto in the entry as will raise the same to the true market value of such imports. By that act also ad valorem duties are required to be assessed upon the true market value of the imports in the principal markets of the country whence the importation shall have been made; and it is made the duty of the collector to cause the dutiable value of such imports to be appraised, estimated, and ascertained in accordance with the provisions of existing laws. Actual market value or wholesale price is also the rule in all cases, under the appraisement act of March 3, 1851 (9 Stat. 629), and the first section of the act provides that to such value or price shall be added all costs and charges, except insurance, as the true value at the port where the same may be entered, upon which the duties shall be assessed. Such value or price must still be ascertained by appraisement; but the third section of the last-named act provides that the appraisement shall be final and conclusive, and deemed and taken to be the true value of the goods; and the duties shall be levied thereon accordingly. Clearly, therefore, the duties are now calculated from the report of the appraisers, and not from the invoice and entry, as was the case under several of the earlier acts of congress. But the entry, if practicable, must still be accompanied by the invoice and bill of lading; and no doubt is entertained that in all cases where the goods are actually purchased, and the entry is made by the owner, or any other person having knowledge of the fact, it is incumbent on him to make oath that the invoice contains a true and faithful account of the actual cost of the goods. Appraisers, it is true, are required to ascertain, estimate, and appraise the true market value, or wholesale price; but it is obvious that any evidence showing what was the actual cost of the importation would greatly facilitate that inquiry; and in practice the invoice produced of the actual cost of the goods furnishes the principal guide for the appraisers in the performance of their duty. Purchasers know what the actual cost was, and therefore are required to state that fact in the invoice; and the fact is scarcely less important under the present rules of appraisement than it was when the duties were levied on the invoice. Manufacturers or the producers of the goods do not know the actual cost of the articles, as in the case of the purchaser; and consequently a different form of oath is prescribed, corresponding in its requirements with the nature of the case. It is insisted by the district attorney, however, that actual cost and true market value mean the same thing. Three terms, to wit, "actual cost," "prime cost," and "real cost" are employed in the first-named act, as expressive of value; and the term used in the fifteenth section of the act of April 20, 1818, is the "true value" of the goods in their actual state of manufacture. Shortly after the passage of the last-named act, a case arose in which it was contended that the provision last referred to changed the basis of valuation established in the first-named act, and introduced a new one equivalent to the actual market value of the importation. But Judge Story held otherwise, admitting, however, at the same time, that if the words had been "market value," instead of "true value," as they were, he would have been of a different opinion. Tappan v. U. S. [Case No. 13,749]. "Fair market value" is the term employed in the act of March 1, 1823; and subsequently to its passage the question was again presented to the circuit court for this district. On this last occasion, the same learned judge held that the phrase "actual cost," in the first-named revenue act, means the actual price paid in a bona fide purchase, and not the market value, and added, that he was very much inclined to hold the opinion that the provision on which this information is founded, so far as it inflicts a penalty, did not apply, except to cases where an actual purchase had been made, and of course where the invoice ought to be of the actual cost upon such purchase. Alfonso v. U. S. [supra]. Prior to that decision, the same point, substantially, had been ruled by the supreme court in Tappan v. U. S., 11 Wheat. [24 U. S.] 423; and it is worthy of remark that Mr. Justice Thompson, in the course of the opinion given in that case, admits that there is a distinction between actual cost and current market value. Strong doubts are entertained whether the provision in question ever had any application to a case like the present, as exhibited in the plea in bar; but it is not necessary to place the decision entirely upon that ground, because it is clear and unmistakable that the basis of dutiable valuation has been changed from the actual cost to the actual market value or wholesale price. Persons presenting invoices, who

have purchased the goods, or have the means of knowing the actual cost of the articles in the foreign market, are still obliged to make oath that it contains a true and faithful account of the actual cost; but that requirement is not now applicable to the manufacturer or producer, because they are not supposed to have the means of knowledge to enable them to comply with its terms. It is admitted by the demurrer that the claimants in this case were the manufacturers and owners of the importation, and that as such manufacturers and owners they imported the goods; and consequently I am of the opinion that the judgment of the district court must be affirmed.