### BOSTON AND ALBANY RAILROAD COMPANY vs. COUNTY COMMISSIONERS OF HAMPDEN.

Hampden.    September 26. — October 22, 1874.    WELLS & COLT, JJ., did not sit.

Upon a petition to the county commissioners under the St. of 1872, c. 262, § 1, for an alteration in the crossing of a railroad by a highway, a county commissioner, who resides in the city or town in which the crossing is situated, is disqualified by the Gen. Sts. c. 17, § 12, to act, unless a board cannot be organized without him.

County commissioners have no power, under the St. of 1872, c. 262, to change the grade of a railroad, where it crosses a highway.

A petition by the directors of a railroad corporation to the county commissioners, under the St. of 1872, c. 262, representing that in their opinion it is necessary for the security and convenience of the public that the method of crossing two streets by their railroad should be altered, and requesting the county commissioners " to prescribe such an alteration as will separate the grade of said railroad from the grades of said streets and allow said streets to pass under said railroad," does not prevent the railroad corporation from objecting that an order passed by the county commissioners upon that petition is invalid, because it undertakes to change the grade of the railroad.

Under the St. of 1872, c. 262, § 2, one of the special commissioners to determine by whom an order of the county commissioners for an alteration in the crossing of a railroad by a highway in a city shall be carried into effect, and the expenses thereof paid, is to be named by the county commissioners, and not by the mayor and aldermen, although the highway is wholly within the city.

Upon a petition of the mayor and aldermen of a city in which a railroad crossing was situated, and of the directors of the railroad corporation, under the St. of 1872, c. 262, § 1, for an alteration of the same, the order of the county commissioners required an alteration in the grade of the railroad. *Held*, that upon the petition of the railroad corporation, filed seven months after that order, but before any award of the special commissioners appointed under § 2, a writ of certiorari should issue to quash the order of the county commissioners.

Under the St. of 1873, c. 355, a writ of certiorari may be ordered to be issued in vacation and returnable forthwith.

PETITION for a writ of certiorari, filed September 9, 1874. The case was heard and reserved by *Endicott*, J., for the consideration of the full court upon the petition and answer, and the record of the county commissioners, (a copy of which was annexed to the petition,) and was as follows:

On October 1, 1873, the directors of the Boston and Albany Railroad Company and the mayor and aldermen of the city of Springfield presented a joint petition to the county commissioners, under the St. of 1872, c. 262, § 1, representing that the petitioners

were of opinion that it was necessary for the security as well as the convenience of the public " that the method of crossing Main and Chestnut streets, in said city, by said railroad should be altered," and requesting the commissioners " to prescribe such an alteration as will separate the grade of said railroad from the grade of said streets and allow said streets to pass under said railroad."

In the proceedings upon that petition, Simeon S. Southworth, one of the special commissioners of the county, acted in the stead of George R. Townsley, one of the county commissioners, who was a resident of Springfield, and therefore, as stated in the record of the county commissioners, disqualified to act.

The commissioners, after notice, view and hearing, on January 31, 1874, adjudged that common convenience and necessity required that the prayer of the petition should be granted, and prescribed the manner and limits within which the alteration should be made, the details of which were stated in their order, and by which the grade of the railroad across Main Street was to be raised ten feet, and across Chestnut Street two and a half feet, and the grade of each street where it crossed the railroad was to be lowered ; and named S. A. Bartholomew, a resident and tax payer in Blandford in this county, " as one of three disinterested persons to determine the parties by whom the foregoing decision shall be carried into effect."

Main Street is a highway, part of which only is within the city of Springfield. Chestnut Street is entirely within it, and was laid out as a highway before Springfield was made a city.

The reasons assigned in the petition of the railroad corporation for a writ of certiorari to quash these proceedings were as follows :

" First. Because the statute authorizes only the county commissioners to act on the petition to them ; and the said Townsley was not disqualified by residence to act ; and the said Southworth had no authority to act in the premises ; and the two county commissioners, and the said Southworth acting as a county commissioner instead of the third county commissioner, had no jurisdiction of the petition to the county commissioners, and their acts and orders in the premises are without authority.

" Second. Because the county commissioners have no jurisdiction to change the grade of the railroad of this petitioner, under the statute.

" Third. Because the petition to the county commissioners did not ask for a change of grade of the railroad, but did ask that the streets might pass under the railroad ; and under the petition the county commissioners had no jurisdiction to change the grade of the railroad.

" Fourth. Because the county commissioners had no authority to appoint a member of the commission, provided for by the statute, to determine who should carry into effect any order relative to Chestnut Street, or the railroad crossing at Chestnut Street, a street the termini of which are entirely within the city of Springfield.

" Fifth. Because S. A. Bartholomew, named as one of the commission to determine by whom the order aforesaid should be carried into effect, was not and is not a disinterested person within the meaning of the statute, being a resident of and a tax payer in Blandford in the county of Hampden."

*A. L. Soule,* for the petitioner.

*B. F. Thomas & H. Morris,* for the respondents.

GRAY, C. J. This is an application for a writ of certiorari to quash the proceedings had upon a petition to the county commissioners, under the St. of 1872, *c.* 262, for an alteration in the method of crossing Main Street and Chestnut Street in Springfield by the Boston and Albany Railroad.

1. By the express terms of the Gen. Sts. *c.* 17, § 12, if any part of a road upon which the county commissioners are to act lies within the city or town in which either of them resides, he is disqualified to act thereon (unless a board cannot be organized without him) and one of the special commissioners of the county is to act in his place. A petition to the county commissioners under the St. of 1872, *c.* 262, is addressed to them in their official capacity. In the present case, the petition required their action upon two streets within the city of Springfield. One of the county commissioners, residing in Springfield, was thereby disqualified to act thereon, and one of the special commissioners rightly acted in his stead. The board of county commissioners was therefore legally organized for the performance of the duties required of it by the St. of 1872. *Tolland* v. *County Commissioners,* 13 Gray, 12. *Haverhill Bridge* v. *County Commissioners,* 102 Mass. 120.

2. The next and the most important question in the case is whether the St. of 1872, *c.* 262, has authorized the county commissioners to change the grade of a railroad at a place where it crosses or is crossed by a highway.

In determining the true interpretation and legal effect of this statute, we must keep in mind several important considerations of a general nature, which have been pointed out in the opinions of this court in similar cases.

The statute is not to be read according to the mere letter, but having regard to the nature of the subject matter, the various interests, public and private, which are to be affected, and the policy and intent of the legislature, as appearing from a comparison of the statute to be expounded with earlier enactments upon the same subject. The much greater weight and speed of the engines and cars moved by steam upon a railroad, than of the wagons and carriages travelling upon an ordinary highway, render it necessary that the railroad should be constructed nearly upon a level, and make it much more practicable, in accommodating the necessities of the one to those of the other, to vary the grade of the highway than that of the railroad. The court of county commissioners is a tribunal which has long been vested by law with various and extensive powers in the laying out, discontinuance and alteration of highways, but which was never before clothed with any authority to alter the grade or location of railroads once constructed. And a change of legislative policy in so important a matter is not to be presumed unless clearly expressed. *Springfield* v. *Connecticut River Railroad*, 4 Cush. 63, 68. *Roxbury* v. *Boston & Providence Railroad*, 6 Cush. 424, and 2 Gray, 460. *Boston & Maine Railroad* v. *Mayor &c. of Lawrence*, 2 Allen, 107. *Mayor & Aldermen of Worcester* v. *Railroad Commissioners*, 113 Mass. *Lancaster* v. *County Commissioners*, Ib.

A recapitulation of the material provisions of the general railroad act, as existing at the time of the passage of the St. of 1872, will show that the railroad corporation alone was authorized to change the grade of its railroad at a crossing, and that only the grade of the highway and the structures at the crossing were submitted to the regulation of the county commissioners.

Upon the laying out of a railroad across a highway or town way, the railroad corporation was required by the statute, with

out any order of the county commissioners, to make its road so as not to obstruct the way; either by passing over it, leaving a sufficient space to conveniently accommodate the travel upon the way; or by passing under it, building and maintaining such bridges with suitable approaches thereto, as in like manner to ac-commodate such travel. It was only when the corporation found it necessary to raise or lower the way, or to alter its course, or when the railroad caused an obstruction to the way, or when in the opinion of the county commissioners subsequent alterations of the way or additional safeguards were required at the crossing, that any order of the county commissioners was required or authorized; and such an order was limited to prescribing " what alterations may be made in the way, and the manner and time of making the alterations or structures the commissioners may require at the crossing." Gen. Sts. *c.* 63, §§ 46–49, 55, 60.

The railroad corporation was required to maintain and keep in repair " all bridges with their approaches and abutments," which it constructed over or under any highway or other way. Gen. Sts. *c.* 63, § 61.

After a railroad had been laid out and made, the county commissioners might, at the expense of the county, city or town, lay out, or authorize the mayor and aldermen or selectmen to lay out, a way across it, passing over, or under, or, if public necessity so required, upon a level with the railroad; and if over, determining and specifying in what manner the bridge necessary for the crossing should be constructed; and it was expressly provided that " such ways shall be so made as not to obstruct or injure the railroad." Gen. Sts. *c.* 63, §§ 57–59.

" The original jurisdiction of all questions touching obstructions to turnpikes, highways or town ways, caused by the construction or operation of railroads," was vested in the county commissioners. Gen. Sts. *c.* 63, § 62. But that section, taken in connection with the other provisions of the statute, related to the raising or lowering of ways, bridges or the like, at railroad crossings, and gave the county commissioners no authority over the location or the grade of railroads. *Springfield* v. *Connecticut River Railroad.* 4 Cush. 63, 68.

When a highway or town way was crossed by a railroad upon a level therewith, the mayor and aldermen or selectmen, if of

opinion that it was necessary for the security of the public that the way should be raised or lowered, might request the railroad corporation to do so, and, upon its refusal, apply to the county commissioners; and if the commissioners decided that such raising or lowering was necessary for the security of the public, their decision was to be carried into effect by the railroad corporation, or, in case of its neglect, by the mayor and aldermen or selectmen, at its expense. Gen. Sts. c. 63, §§ 53, 54. It was held by this court that such an order of the county commissioners should specify and define the alterations to be made; and that a mere order that the way should be raised above the railroad, without defining the height, the grade of the ascent, the mode and method of the structure, or the time within which the work should be done, was too indefinite to be enforced. *Roxbury* v. *Boston & Providence Railroad*, 6 Cush. 424, and 2 Gray, 460.

The only case, we believe, in which the county commissioners had any authority over the grade of a railroad, was that in which, before its construction, they might, upon the application of the railroad corporation, or the proprietors of a turnpike, or the mayor and aldermen or selectmen, and if public necessity required it, authorize and require the railroad corporation to construct its railroad, at a crossing, upon a level with a turnpike, highway or town way, in such manner as they might direct. St. 1865, c. 239.

The St. of 1872, c. 262, supersedes and expressly repeals §§ 53, 54, of c. 63 of the General Statutes, and differs from them in its provisions as to the parties who may make the application, those who shall carry the order of the county commissioners into effect, and those who shall bear the expense of the alteration, as well as in the definition of the cases in which the application may be made, and of the power of the county commissioners.

Under the General Statutes, the application to the county commissioners could only be made by the mayor and aldermen or selectmen, and after requesting the railroad corporation to make the desired alterations. Gen. Sts. c. 63, § 53. Under the St. of 1872, the application may be made either by the mayor and aldermen or selectmen, or by the directors of the railroad corporation, and without any previous request. St. 1872, c. 262, § 1.

By the former statute, if the application was granted, the railroad corporation was to pay the costs, and the decision of the

county commissioners was to be carried into effect by the railroad corporation, or, upon its refusal or neglect to do so, by the mayor and aldermen or selectmen at its expense. Gen. Sts. *c.* 63, § 54. By the St. of 1872, a special commission, consisting of three disinterested persons, (one a member of the board of railroad commissioners, and the other two named, the one by the railroad corporation, and the other by the county commissioners if the way is a highway, or by the selectmen or mayor and aldermen if it is a town way, or, in case of neglect of either so to nominate, by the board of railroad commissioners,) is to determine " the party by whom such decision shall be carried into effect," and also " by what party all charges and expenses occasioned by making such alteration, and all future charges for keeping in repair such crossing and the approaches thereto, as well as all costs of the application to the county commissioners, or of the hearing before said commission, shall be borne; or said commission may apportion all such charges, expenses or costs between the railroad corporation and the town, city or county in which said crossing is situated." St. 1872, *c.* 262, §§ 2, 4.

The manifest objects of the changes in the statute, thus far mentioned, were, that, as an inconvenient crossing might injuriously affect the public travel on the railroad as well as that upon the highway, the officers of the railroad corporation should have the same right as the municipal authorities of the city or town in which the crossing was situated to apply directly to the county commissioners for a remedy; and that, as it might be inequitable to charge upon the railroad corporation in all cases the expenses of alterations which might be wholly or in part demanded by the exigencies of the travel on the highway, (increased perhaps by the benefits derived to the neighborhood from the establishment of the railroad,) those expenses might be imposed and distributed upon and between the railroad corporation and the city, town or county, as justice might require.

The remaining changes in the statute may have full effect by considering them as intended to carry out the same objects, without attributing to them the intention of implying a grant to the county commissioners of the unusual power to alter the grade of the railroad, which could have been easily and clearly expressed in a few words if the legislature had so intended. But as they

were much relied on by the learned counsel for the county com-
missioners, it is proper to examine them with care.

The former statute covered only the case of " a turnpike, high-
way or town way, crossed by a railroad on a level therewith ; "
the application could only be made when the applicants were of
opinion that it was necessary for the security of the public that
the " way should be raised or lowered so as to pass over or under
the railroad ; " and the county commissioners were to decide
whether " such raising or lowering " was necessary.

The St. of 1872 extends to every case in which " a highway
or town way crosses or is crossed by a railroad," or a railroad
" crosses or is crossed by such way ; " application may be made to
the county commissioners whenever the applicants are of opinion
that it is necessary for the convenience or security of the public
' that the approaches to or method of such crossing should in any
way be altered ; " and the county commissioners shall, when they
" decide that such alteration is necessary, prescribe the manner
and limits within which it shall be made."

The substitution, for the words " highway or town way crossed
by a railroad on a level therewith," of the fuller definition — " a
highway or town way which crosses or is crossed by a railroad,"
or a railroad " which crosses or is crossed by such way " — made
the statute embrace all cases in which a highway or town way
and a railroad crossed each other, whether upon a level or not,
and whether the way or the railroad was uppermost, and which-
ever was made first.

To some of the cases thus brought within the statute, the
limited remedy of. the former statute — that the " way should be
raised or lowered so as to pass over or under the railroad "— would
be inadequate, and a further change of phraseology in this respect
was therefore requisite. But even under the more comprehensive
and flexible provision of the St. of 1872, it is only " the approaches
to or method of such crossing" that shall "in any way be altered;"
and it is only when the commissioners decide " that such altera-
tion is necessary," that they are to " prescribe the manner and
limits within which it shall be made."

The " approaches " to the crossing, in the common use of the
word, relate to the grading of the highway and not to that of the
railroad. The word is so used in two sections of the former stat-

ute, already referred to. Gen Sts. *c.* 63, §§ 47, 61. If the grade of the railroad should be altered, such alteration must of necessity be so gradual, and extended over so long a line, that the part so altered could hardly be distinguished from the rest of the railroad ; and it cannot have been intended to include the expenses of keeping in repair any part of the railroad among the " future charges for keeping in repair such crossing and the approaches thereto," which by § 2 of the St. of 1872 may be imposed upon the town, city or county.

" The method of such crossing " and " the manner and limits " of the alteration, though not mentioned in the former statute, yet embrace no more than this court held to be necessary to be specified in an order of the county commissioners requiring a highway to be raised or lowered at a railroad crossing. *Roxbury* v. *Boston & Providence Railroad*, 2 Gray, 460.

By the Gen. Sts. *c.* 43, county commissioners have full power to lay out, alter and discontinue highways. By the Gen. Sts. *c.* 63, § 55, they might authorize the course of a highway or townway to be altered, for the purpose of facilitating the crossing of the same by a railroad. And the St. of 1872 in terms requires the county commissioners, when they decide that an alteration is necessary, to prescribe " the limits," as well as " the manner," in which it shall be made. And yet it has been decided that they have no authority, upon proceedings under this statute, to change the location of the highway. *Lancaster* v. *County Commissioners*, 113 Mass. . There is even less ground for inferring an authority in them to change the grade of the railroad, which they had no authority by law to do under any other circumstances, or by any other form of proceeding.

The St. of 1874, *c.* 305, passed while the case of *Lancaster* v. *County Commissioners* was pending, amends the St. of 1872 by striking out the words " that the approaches to or method of such crossing should in any way be altered," and inserting in place thereof these words : " that any alteration should be made in such crossing, or in the approaches thereto, or in the method of such crossing, or in the location of the railroad, or in the location of the highway or town way, or in any bridge at such crossing." But the St. of 1874 (whatever its effect may be upon future cases) expressly provides that " nothing in this act con-

tained shall in any wise affect any case now pending or in which proceedings have been commenced;" and, upon familiar rules of construction of statutes, cannot enlarge the interpretation of the St. of 1872 as applied to proceedings had before the St. of 1874 was passed.

Our conclusion therefore is, that the county commissioners had no jurisdiction under the St. of 1872, c. 262, to change the grade of the Boston and Albany Railroad at the crossings of Main Street and Chestnut Street.

3. The petition of the directors of the railroad corporation and the mayor and aldermen of the city asks the county commissioners " to prescribe such an alteration as will separate the grade of said railroad from the grades of said streets and allow said streets to pass under said railroad." This points rather to a change in the grade of the streets, so as to allow them to pass under the railroad at its existing grade, than to a change in the grade of the railroad; and certainly does not so distinctly suggest the latter as to prevent the railroad corporation from afterwards objecting that to change the grade of the railroad was beyond the jurisdiction of the county commissioners.

4. As Main Street and Chestnut are both highways, and not town ways, it is immaterial that one of them is wholly within the city of Springfield; and it was for the county commissioners, and not the mayor and aldermen, to name one of the special commission of three disinterested persons, under St. 1872, c. 262, § 2.

5. There is nothing in the petition of the railroad corporation for a writ of certiorari, or in the answer or record of the county commissioners, upon which this case has been submitted to our determination, to support the suggestion, made in behalf of the respondents at the argument, that the railroad corporation, by naming one of the special commission, has consented to the order of the county commissioners and waived any right to object to it for want of jurisdiction.

6. It was argued that the railroad corporation, in neglecting for seven months since the passage of the order of the county commissioners, to apply for a writ of certiorari, had been guilty of such laches that the writ should not be granted. But as that order exceeds the lawful jurisdiction of the county commissioners, and has not been carried into effect, and the special commission

has not even determined the parties by whom it shall be carried into effect, and indeed is not authorized by law to direct any party to make, or to pay the expense of making and maintaining, a change in the grade of the railroad, which is an essential and inseparable part of the order of the county commissioners, the delay affords no reason for allowing that order to stand.

The writ of certiorari must therefore issue as prayed for. The question whether the proceedings of the county commissioners shall be merely quashed and set aside, or the commissioners be directed to proceed anew according to law upon the original petition, will be a matter proper to be considered upon the return of the writ. Gen. Sts. *c.* 145, § 9. *Lowell* v. *County Commissioners*, 6 Allen, 131.

By the former practice in cases of certiorari and mandamus, although the hearing upon the petition for the writ might be had in any county, and usually involved a consideration of the whole merits of the case, yet such hearing was had only at a regular term, and the writ, if issued, was made returnable at the next term of the court in the county in which the tribunal was established to which it was addressed. *Taylor* v. *Henry*, 2 Pick. 397, 400. The delay thereby occasioned was a cause of so much inconvenience, that it is now provided by statute that the petition for either of these writs may be presented, heard and determined in any county, in term time or vacation; and the writ "may be issued from the clerk's office in any county, and be made returnable as the court shall direct." St. 1873, *c.* 355. Under the power thus conferred, it is ordered that the writ issue from the clerk's office in Hampden, returnable forthwith in the same county. *Writ of certiorari to issue.*