OLD COLONY RAILROAD COMPANY *vs.* CITY OF FALL RIVER & another.

Suffolk.    January 27, 30, 1888. — October 19, 1888.

Present : MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Grade Crossing of Railroad by Way — Laying out and Construction by City — Certiorari — Injunction.*

If a city lays out a way forty feet wide across a railroad at grade, under an order of county commissioners authorizing it to be laid out fifty feet wide, the only remedy of the railroad company is by a petition for a writ of certiorari.

If a railroad company refuses to construct its proper proportion of a way laid out across its location at grade, under the Gen. Sts. c. 63, §§ 57–60, (Pub. Sts. c. 112, §§ 119, 123–125,) the city within which it is situated will not be enjoined from entering and constructing the entire way across such location.

BILL IN EQUITY, filed May 5, 1886, to restrain the city of Fall River and Anthony Thurston, its surveyor of highways, from removing fences on either side of the plaintiff's location at and across Pearce Street in that city, and from constructing the street across such location.

The bill alleged, that in 1874 the mayor and aldermen and common council of Fall River attempted to lay out Pearce Street across the plaintiff's railroad in that city at grade; that they petitioned the county commissioners for leave to do so, but the proceedings had were so imperfect that the attempted laying out was void; that nothing had been done, in fact, to open Pearce Street for travel across the railroad location, although

the city council at times had so voted; that the plaintiff had always maintained fences across Pearce Street along the line of its location, and rightfully had the exclusive use of the same; that there were three tracks over the location, and that upwards of one hundred trains passed daily over the same; that at a meeting of the city council, held May 3, 1886, the following vote was passed: "Ordered, that the surveyor of highways forthwith notify the Old Colony Railroad Company to take down the fences now standing across Pearce Street, and to put the public crossing there in condition for travel, on or before Thursday next; that the surveyor of highways, in case said fences shall remain standing after said Thursday, shall take the same down, put said crossing in order for travel, and prosecute all proceedings necessary to establish the title of the public thereto."

The bill also alleged that notices had been served on the president of the plaintiff corporation and upon one of its directors, of like tenor with the following: "Fall River, May 4th, 1886. To —— ——: Dear Sir, — In accordance with an order passed by the city council yesterday, May 3d, I hereby notify the Old Colony Railroad Company to take down the fences now standing across Pearce Street in this city, on both sides of its road, and to put the crossing there in proper condition for travel on or before Thursday next. Respectfully, Anthony Thurston, Surveyor of Highways."

The bill further alleged that such action on the part of the city and the highway surveyor would constitute an unwarrantable interference with the plaintiff's rights, and was not required to protect any rights of the city or the public, if any, in Pearce Street, and would interfere with the operation and running of the plaintiff's railroad, and would imperil the safety of the public and constitute a nuisance; and that the defendant city threatened to take down the fences at Pearce Street, and to enter upon the plaintiff's tracks, to prepare it for public travel; and the prayer of the bill was for an injunction to prevent the same, and for further relief.

The answer, after reciting the proceedings before the county commissioners, alleged that within one year of the laying out of Pearce Street by the mayor and aldermen and common council, on or about December 28, 1874, the street was worked and opened

to the public use, and had been so used ever since, except so far
as the plaintiff had obstructed it; that at the time of the laying
out, and at other times, the plaintiff was duly notified to take
down and remove the fences within the limits thereof, but had
neglected and refused so to do; that about the year 1879 the
plaintiff rebuilt fences then standing within the limits of Pearce
Street, and extended them so as to close up that portion of the
street then open across its location and used by foot passengers;
that the plaintiff moved the fence upon the easterly side of its
location farther on and upon Pearce Street; that the fences
were a public nuisance, and obstructed the use of the street by
the public, who were entitled thereto, as a duly laid out public
highway; and that the order of the city council of May 3, 1886,
was legal and proper, and the defendant Thurston, named therein,
was the legally appointed surveyor of highways of the city.

Hearing before *Holmes*, J., who reported the case for the
consideration of the full court, such order or decree to be made
as upon the facts equity might require. The report was in
substance as follows.

A preliminary injunction was issued as prayed for. The de-
fendants justify the proposed construction of the street across
the location of the railroad under an alleged laying out of the
way at grade in 1874, under the Gen. Sts. c. 63, §§ 57, 59.*

---

* The Gen. Sts. c. 63, §§ 57-60, are as follows :

" Section 57. If after the laying out and making of a railroad the
public convenience and necessity require a turnpike road or other way to be
laid out across it, such road or way may be so laid out and established when
the county commissioners so authorize and direct; and all expenses of and
incident to constructing and maintaining the road or way at such crossing
shall be borne by the county, city, town, or corporation owning the same.

" Section 58. The commissioners before so laying out any way across a
railroad shall cause due notice to be given to the corporation that it may be
heard in the premises ; and after hearing all parties interested they may
lay out the same, directing whether the crossing shall be over, under, or at a
level with the railroad, but not permitting it to be at a level unless public
necessity so requires. If the way shall pass over the railroad they shall
determine and specify in what manner the bridge necessary for the crossing
shall be constructed. Such ways shall be so made as not to obstruct or
injure the railroad.

" Section 59. The mayor and aldermen or selectmen, before laying out
a way across a railroad, shall apply to the county commissioners for permis-

On March 31 and on August 8, 1873, petitions were presented to the city council of Fall River for the laying out of Pearce Street. After notice and hearing, the mayor and aldermen, on November 3, 1873, directed the mayor to petition the county commissioners for leave to lay out Pearce Street from North Main Street to Davol Street, fifty feet wide, and " to cross the track of the Old Colony Railroad at grade." On November 7, 1873, the mayor petitioned the county commissioners, in behalf of the mayor and aldermen, for leave to lay out Pearce Street, a private way thirty feet wide running up to the railroad location on either side, across the track of the Old Colony Railroad at grade at a " uniform width of fifty feet," and on January 21, 1874, the commissioners ordered that " leave be granted to lay out Pearce Street, as prayed for." The mayor and aldermen, on May 4, 1874, acting under this authority, proceeded to lay out the street across the railroad forty feet in width, at the same elevation as the then grade of the railroad on the easterly line, and on December 28, 1874, the common council concurred in such laying out by vote.

Within a year after the above proceedings, the city entered upon the street, paid the damages awarded to abutters, worked the street, and opened it to public travel to a width of forty feet up to the line of the location of the railroad on either side. The railroad company never admitted the validity of the laying out across its location, and refused to remove its fences from either side thereof, and in 1880 it set the fences upon the easterly side of its location several feet farther eastward upon the street, to

---

sion so to do. The commissioners shall cause due notice of the application to be given to the corporation owning the railroad; and after hearing the parties interested they may authorize the mayor and aldermen or selectmen so to lay out the way, and shall require it to be laid out and constructed in accordance with the provisions of the preceding section. They shall give special authority permitting it to be laid out upon a level with the railroad when in their opinion public necessity so requires.

" Section 60. A corporation whose road is crossed by a turnpike or other way on a level therewith, shall at its own expense so guard or protect its rails by plank, timber, or otherwise, as to secure a safe and easy passage across its road; and if in the opinion of the county commissioners any subsequent alteration of the turnpike or other way, or any additional safeguards are required at the crossing, they may order the corporation to establish the same as provided in section forty-eight."

the line of a location upon land taken by authority of the Legislature to widen its location for a double track. No proceedings were ever instituted to enforce the construction of the street across the location of the railroad under the alleged laying out, or to remove the obstruction caused by the fences.

For some time after the alleged laying out there was, by permission of the railroad company, more or less travel by foot passengers across the railroad premises, which was subsequently stopped by boarding up the openings in the fences through which foot passengers had passed.

In 1873 the railroad company ran twenty-eight trains daily over its road at this point, had two tracks, and carried about one hundred and fifty thousand tons of freight daily. At the time of the hearing, it had three tracks, ran about seventy-six trains, and carried about three hundred and forty thousand tons of freight daily at the same point.

The judge ruled that the order of the county commissioners, if valid, was a permission only to lay out the crossing at grade fifty feet wide ; that a substantial departure from the terms of the permission would make the subsequent proceedings of the mayor and aldermen and city council void; and that the attempt to lay out the crossing forty feet wide was such a substantial departure.

*J. M. Morton & J. H. Benton, Jr.*, for the plaintiff.

*J. F. Jackson*, for the defendants.

DEVENS, J. That there were certain irregularities and informalities in the proceedings of the board of mayor and aldermen in laying out Pearce Street across the railroad of the petitioner must be conceded. But the record of an inferior court or tribunal, not proceeding according to the course of the common law, cannot be impeached for mere informalities, either in an action of tort against one exercising authority under its order or decree, or by bill in equity to enjoin him from so doing. The writ of certiorari brings up the whole record, and this will not be granted on the petition of a party claiming to be injured, unless it shall be seen that substantial justice requires it. *Robbins* v. *Lexington*, 8 Cush. 292. *Locke* v. *Lexington*, 122 Mass. 290. *Foley* v. *Haverhill*, 144 Mass. 352. *Attorney General* v. *Northampton*, 143 Mass. 589.

Even if, in a limited sense, the error committed by such a tribunal may be said to affect its jurisdiction, as where notice of its proposed proceedings is defective, advantage of this can be taken by certiorari only. " The rule," it is said in· *Foley* v. *Haverhill, ubi supra,* " seems to be somewhat analogous to another Massachusetts rule, that a domestic judgment cannot be impeached collaterally upon grounds which would be open on writ of error." The contention of the plaintiff is, that even if, in the case at bar, a petition for certiorari might have been brought, the report shows that the mayor and aldermen had absolutely no jurisdiction of the subject with which they undertook to deal; and that, whether their order could or could not have been dealt with upon certiorari, it was wholly void, and therefore it is entitled to an injunction forbidding the defendants to act thereunder.

The mayor and aldermen of Fall River, with the concurrence of the common council, had exclusive power to lay out streets and town ways within the city limits. By the Gen. Sts. c. 63, § 59, before such a way was laid out over a railway already constructed, an application to the county commissioners was necessary, who, after proper notice, might give permission so to do, where the way was to cross above the railroad, requiring it to be laid out and constructed according to the provisions of § 62. The county commissioners were entitled also to give special authority permitting the highway to be laid out upon a level with the railroad, when in their opinion public necessity should so demand.

A petition for the location of a way over the railroad was presented to the city council, and the mayor was subsequently authorized to petition the county commissioners to lay out Pearce Street, from North Main Street to Davol Street, fifty feet wide, and " to cross the track of the Old Colony Railroad at grade." This petition to the county commissioners was made, and, after due proceedings, it was ordered by the county commissioners that " leave be granted to lay out Pearce Street as prayed for." Acting under this authority, the mayor and aldermen proceeded to lay out Pearce Street across the railroad forty feet in width on the same grade, and in this laying out the common council concurred. The city entered upon the street, awarded damages

to the abutters, worked the street, and opened it to the public up to the location of the railroad on either side.   The railroad corporation never admitted the validity of the laying out across its location, refused to remove its fences from either side of the location, and in 1880 set the fences on the easterly side thereof several feet farther eastward upon the street, to a line upon land subsequently taken by authority of the Legislature to widen its location.

The inquiry that was submitted to the county commissioners by the petition of the mayor was twofold: first, whether public necessity and convenience required that there should be any way across the railroad; and, secondly, if there was to be such crossing, whether it might be ordered to be made at grade. The plaintiff contends that the width of the way stated therein is an essential part of the petition, that the leave granted by the county commissioners was only to lay out a crossing at grade of fifty feet in width, and that the attempt to lay out one of forty feet in width was a substantial departure from the leave as granted, by reason of which the subsequent proceedings would be invalidated.   If we assume, without so deciding, that the construction given by the plaintiff to the authority granted by the county commissioners is correct, and that the act done by the mayor and aldermen, in concurrence with the common council, in laying out Pearce Street forty feet only in width, was unauthorized, the question remains whether there was any remedy for the plaintiff, except by a petition for certiorari.   Even if the act of the city authorities was wholly without their jurisdiction and void, it is clearly settled that certiorari would be an appropriate remedy.   *Charlestown* v. *County Commissioners,* 3 Met. 202.   *Boston & Maine Railroad* v. *Lawrence,* 2 Allen, 107.   *Boston & Albany Railroad* v. *County Commissioners,* 116 Mass. 73.

It may be questioned if the proceedings of tribunals exercising judicial functions can be impeached upon grounds which are open under a writ of certiorari.   *Barnes* v. *Springfield,* 4 Allen, 488.   *Foley* v. *Haverhill,* 144 Mass. 352.   Whether this be so or not, the laying out of the street across the plaintiff's location forty feet in width only was an act done by the board of mayor and aldermen and the common council in excess of their author-

ity, while dealing with a matter within their jurisdiction, rather
than an act without jurisdiction and therefore wholly void. The
office of a writ of certiorari is to correct the errors and restrain
the excesses in the exercise of jurisdiction by inferior courts
or officers acting judicially. *Locke* v. *Lexington*, 122 Mass.
290. It is not intended that their proceedings shall be at-
tacked collaterally, which might often result in confusion and
perhaps grave injustice, and careful provision has been made by
legislation for the protection of the rights of all parties inter-
ested, when such proceedings are brought up for revision on cer-
tiorari. In such case this court, if it finds error therein, may
not only quash the proceedings, but may order them to be
amended, may enter such judgment as the inferior tribunal
should have entered, or may direct it to proceed anew according
to law. Gen. Sts. c. 145, § 9; Pub. Sts. c. 186, § 9. *Boston &
Albany Railroad* v. *County Commissioners*, 116 Mass. 73.

The question of laying out a street at grade over the railroad
location was a matter placed within the jurisdiction of the city
authorities by the action of the county commissioners. They
had received full power to locate such a street, if they deter-
mined that public convenience required it. If it was an error
on their part in locating the way only forty feet in width, it
was an error of detail in dealing with a subject legally confided
to them. This error could have been corrected in some one of
the modes adverted to. It did not require that their proceed-
ings should be wholly set aside. The remedy of the plaintiff,
therefore, was solely by a petition for certiorari.

The plaintiff also contends, that, even if the laying out was
valid, or cannot be attacked in this proceeding, the defendants
can have no right to enter upon its location and prepare the road
for public travel across it, within the lines of the way as laid out,
and alleges that the defendant city asserts the right to do this at
such times and in such manner as it deems best. The plaintiff
further contends, that it was the duty of the county commis-
sioners to pass a definite order as to how, at what times, and by
whom the work should be done. It therefore urges that it is
entitled to an injunction forbidding the defendant city by its
servants from entering upon its location for the purpose stated.
The question thus presented was not passed upon by the presid-

ing judge, and, in the view that he took as to the invalidity of the laying out, it was not necessary that it should be. It may be necessary for us to deal with it, as the whole case is reported to us to make such order or decree as, upon the consideration of all the facts, equity may require. So far as this contention is concerned with the order of the county commissioners, if there was a deficiency therein, as the plaintiff urges, it was to be remedied by a petition for certiorari, or perhaps by an application to the county commissioners themselves, on the ground that it was not sufficiently explicit. But if the defendants could have no right to enter upon the plaintiff's location, and the permission to lay out the way across the plaintiff's railroad involved, and could involve, no right to enter upon the location of the plaintiff's railroad, there to prepare the way for public travel, and if the plaintiff was itself preparing its own railroad to be crossed by the highway, or was ready to do so, it may be that it would be entitled to the injunction prayed for.

As to the respective duties of the railroad company and the city authorities in the construction of a highway at grade, the case is governed by the Gen. Sts. c. 63, §§ 57–60, then in force. By § 57, the expenses of and incident to constructing and maintaining the road or way at such crossing shall be borne by the county, city, town, or corporation owning the same. The inference from this drawn by the plaintiff, that some one else is to do the work, as unless this were so it would be unnecessary to provide that the corporation liable should bear the expense, is quite too forced, especially when this section is connected with § 60, which provides that a railroad "corporation whose road is crossed by a turnpike or other way on a level therewith shall at its own expense so guard or protect its rails by plank, timber, or otherwise, as to secure a safe and easy passage across its road." The railroad corporation is further required to provide for any subsequent alteration of the way, or any additional safeguards which the county commissioners may afterwards order to be established.

In *Davis* v. *Leominster*, 1 Allen, 182, 184, it was held that the obligation of a town to make roads safe and convenient for travellers continues where such roads are crossed by railroads at grade, except so far as the necessary use of the crossing by the

railroad may prevent it, and subject to such specific directions as may be given by the county commissioners. In *Jones* v. *Waltham*, 4 Cush. 299, it was held that, if the town made the crossing safe and convenient, except so far as the construction and operation of the railroad rendered it impracticable without interfering therewith, it was not liable for an injury occurring thereon. In *Scanlan* v. *Boston*, 140 Mass. 84, which was decided under the Pub. Sts. c. 112, § 124, — which is the same in substance as the Gen. Sts. c. 63, § 60, — the railroad company had two lines of track eight feet apart. It was held that it was the duty of the railroad company to keep in repair, not only the space between the tracks, but that between the two lines of track, and that the city was not liable for an injury occurring by a defect in that part of the planking between the two lines of track.

The intention of the Legislature has been to impose upon the city, or other corporation authorized to maintain a way crossing a railroad at grade, the expense and the duty of maintaining the way up to the outer line of the railroad tracks, or so near their foundations as not to interfere with them, and upon the railroad between these outer lines. Cases may be suggested where it would not be easy to construct the way up to the outer lines of the railroad without some inconvenience to it, and by the statute the " ways shall be so made as not to obstruct or injure the railroad," (Gen. Sts. c. 63, § 58,) except, it must be presumed, so far as any way would necessarily have that effect. It was contemplated that, when the portion which each should construct and maintain was settled by law, and when no specific directions were given by the county commissioners, no difficulty would be experienced in constructing the entire crossing, with proper regard to the convenience of both the parties interested and the safety of the public. If differences did arise, and neither party sought from the county commissioners any specific directions, each was left to perform its own duty as it might, having regard to the rights of the other.

Assuming that the allegations of the bill, the order to the highway surveyor, Thurston, and the answer, are to be interpreted as showing that the defendant city proposes to enter on the location and construct the way across the whole of it, including that portion occupied by the tracks, the plaintiff is

not entitled to an injunction forbidding it.    It is its own duty to prepare the way, so far as the space between its rails is concerned, " to secure a safe and easy passage across its road."    This duty it refuses to perform, and the performance of it could be enforced by a proceeding for an injunction initiated by the defendant city.    If, instead of commencing such a proceeding, the defendant city now proposes itself to do this work, whatever the inconvenience to the plaintiff may be, it has no right to ask that the defendants be restrained from doing it in any suitable and appropriate manner.                                        *Bill dismissed.*