Fisher, J.
This is an action by the plaintiffs in their individual right to enjoin the defendant railway company and the commissioners of Darke county, Ohio, from proceeding under Sections 3337-8-17 of the Revised Statutes, to abolish two certain grade crossings and in their stead constructing one underhead way.
The plaintiffs allege the incorporation of the railway company; the official character of the other defendants; that the *338 defendant railway Company is operating a railroad east and west through the township of Jackson in said county of Darke; that said railroad was constructed more than fifty years ago and has been in operation ever since; that the defendant railway com-

pany is now engaged in -double tracking its road through certain sections in said township described without turning or changing its line or location; that such improvements are permanent; that the improved county road known as the Wenrick pike, running east and west, is intersected by said railway at grade; that at or near where said pike intersects said railroad *339 a township road, known as the Ft. Recovery road, joins said Wenrick pike a little to the east of said intersection, but does not extend south of said pike; that said railroad also intersects at grade an improved road known as the Stoner road, which runs north and south and crosses the Wenrick pike about 281 feet north of the point where it crosses the railroad at grade about 1500 feet, southeast from where the railroad crosses the Wenrick pike; the distance east from the point where the railroad crosses the Wenrick pike is about 1330 feet; that as part of the plan of improving its railroad said railway company intends to abolish both of said road crossings by raising its grade and tracks at said points, whereby the Stoner road between said railroad and the Wenrick pike will be wholly destroyed, compelling the vacation and abandonment of 281 feet of said road.
That in substitution therefor said railway company has constructed on the south side of its right-of-way a new roadway, the south line of such new way being 115 feet south and parallel with the center of said railway, and to be sixty feet wide, running from the point where the railroad crosses the Stoner road northwest to a point where it will join the Wenrick pike a short distance west of the old crossing. That about midway between the old crossings it proposes to construct an undergrade way to join the Wenrick pike on the north side .of said railroad; that said railway company will turn the Stoner road west on a new way and compel users of the Stoner road, going north, to turn west 772 feet to the underhead way, pass out on the underhead way 209 feet to the Wenrick pike, then go east on the Wenrick pike 706 feet, where they again strike the Stoner road; that the same extra travel would be required of persons coming south on Stoner road and also of persons coming west on the Wenrick pike desiring to go south on the Stoner road; that the same extra travel would toe required of the persons using the Ft. Recovery road desiring to go west on the Wenrick pike or coming east on the Wenrick pike desiring to use the Ft. Recovery road; that the grade of the underhead way will be steep, etc., and that by reason of the elevation of the railroad above the new road on the south side, cuts, etc., it will fill up with snow, making it impassible.
*340 It is further alleged, in substance, that no petition has been filed with the county commissioners to alter, vacate, or turn the location and grade of said highway nor to abolish said grade crossing by freeholders, as required by law (Sections 4661 and 4655); that no proceedings have been had by the commissioners authorizing such change; that said commissioners have not, by resolution, by unanimous vote, or otherwise, declared the necessity or intent to abolish said grade crossings, as required by Sections 3337-817, nor has the railway company taken any legal steps to make such change; that the entire proceedings on its part are unwarranted and illegal; that said highways are exceedingly convenient and valuable and are much used by the public; ■ that the plaintiffs are freeholders owning land adjacent to said roads where defendants propose to alter, vacate, and turn said roads, or near thereto, and whose lands have been assessed for the construction and maintenance thereof; that said commissioners are making no objections nor taking any steps to prevent said railway company making such change, although such commissioners, as individuals, have knowledge of such intent; that such change is being made against the plaintiffs’ protest; that if said railroad is permitted to proceed to carry out its plan their lands will be greatly depreciated in value;. that said roads will be greatly damaged and their usefulness impaired; that the plaintiffs, as well as the traveling public, will suffer great inconvenience and be compelled to travel a much further distance to reach their destinations on said road; that said new way is wholly on land owned or controlled by the railway company ; that the public convenience does not require such change; that there are other freeholders, too numerous to be made parties hereto, who are similarly situated to the plaintiffs, and plaintiffs bring this action on their behalf as well as for themselves.
Plaintiffs ask an injunction against the defendants from further proceeding with said plans, and on final hearing a mandatory order compelling the defendant railway company to restore said highways to their former condition and usefulness.
On application Judge Teegarden granted a temporary injunction as prayed for in the petition. Afterwards the plaintiffs filed a supplemental petition to said cause, alleging in substance that on the 30th day of October, 1909, the railway company, *341 representing to the commissioners that the directors of said railway company were of the opinion that the security and convenience of the public required the abolishment of said grade crossings, made request of said commissioners for the abolishment of said grade crossings; that thereupon, without notice to the plaintiffs and without their knowledge, by unanimous vote, the defendant commissioners passed the following resolution:
“Be It Further Resolved, That the abolition of the grade crossings known as the Stoner read and as Wenrick road crossings, and the. construction of a new undergrade crossing in lieu thereof and between said road crossings be effected as follows:
“The crossing where the road, located on the section line between Sections 28 and 33, Jackson township, Darke county, Ohio, crosses the railroad shall be vacated and abandoned; and the crossing on the section line between Sections 33 and 34, Jackson township, Darke county, Ohio, where the road crosses the railroad shall be abandoned.
. “A new road shall be constructed connecting the public highways, located on the section line between Sections 28 and 33 and on the section line between Sections 33 and 34; the south line of the new highway to be 115 feet south of and parallel with the center line of the present main railway track and said new road shall be 60 feet in width.
“Said new public highway on the south of said railroad shall be connected with the public highway on the north of said railway, known as the Wenrick road, by a new public highway under the railway tracks by means of an undergrade bridge. Said bridge shall be of iron or'steel of the solid floor type and supported by abutments of concrete masonry, said abutments to be constructed at right angles to the main track of the railroad.
“Between the abutments there shall be a horizontal width of 30 feet and a vertical clearance of 12 feet and 6 inches between the surface of the highway and the underside of the bridge superstructure.
“The grade of the new road south of said railroad from the west to the undergrade crossing road shall be approximately level, and from said undergrade crossing road the grade of said new road shall be 2 per cent, to its eastern limit. The grade of the undergrade road from the bridge north to the Wenrick road shall be 5 per cent.; and in no case shall the grades of the new or changed public highways exceed five per cent.
“It will be necessary to acquire for the location of said new road and the change of said highways parcels of land from James and David Ross and from Jonas Amspaugh..
“The abolition of said grade crossings, the construction and *342 re-location of the public highways, the plan of said undergrade crossing known as the Amspaugh crossing, are shown in detail on plan No. 78-11, dated, as revised, July 19, 1909, marked Exhibit “E,” and made a part hereof.
“And it appearing to this board that .all of the real estate necessary to the completion of the improvements herein provided for .according to the plans and specifications therefor, has been acquired by the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company; now, therefore,
“Be It Further Resolved, That said the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company shall assume and pay the entire cost of said improvement.
“Be It Further Resolved, That the work of construction of said improvements shall be done by and under the control of the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company and subject to the approval and acceptance of this board.
“Be It Further Resolved, That these resolutions be published in a newspaper of general circulation in this county, as required by law.”
That having adopted said resolution, further hearing was continued until ten o’clock a. m., December 6th, 1909; that notice to the owners of property abutting on said improvement has been given by the publication of said resolution in a newspaper, etc.; that said publication is the only notice given of the passage of said resolution; that plaintiffs are residents of Jackson township ; that the plans adopted are the same as alleged in the petition ; that if defendant railway company is permitted to proceed with said improvements the same injury, inconvenience and destruction of the highways will accrue as in the petition alleged; that such improvement will not give the traveling public as good roads as now exist; that no accident has occured at said crossing since the construction of said railroad; that said resolution was adopted by virtue of Sections 3337-8-17 of the Revised Statutes of Ohio (O. L. 90, page 359).
That said defendants are without authority under said act to wholly destroy said Stoner road between said railroad and the "Wenrick pike and compel the vacation and abandonment of such part for public travel; are without authority to turn .and change the location and grade of said highway as provided in said resolution; that said act, in so far as it attempts to confer power upon said commissioners to so do without notice and opportunity *343 given plaintiffs, as tax-payers, to be heard and to have their damage ascertained, is -unconstitutional and the proceedings are void.
An .additional order of injunction is asked and, on application, a temporary restraining order was granted.
Before the filing of the supplemental petition the defendants had filed to the original petition a demurrer, and since filing the supplemental petition have filed a motion to dissolve the temporary injunction originally granted and also the restraining order granted in the supplemental petition.
The defendants insist that the plaintiffs can not maintain the suit, either on their own behalf as individuals, or on behalf of the public.
Counsel for plaintiffs ask leave of the court to amend their petition so as to show that request was made of the prosecuting attorney to bring this suit, which was refused, and plaintiffs bring such suit on behalf of the public as well as their own behalf. This leave to amend the court grants.
It seems clear to the court that the original petition, standing alone, stated a good cause of action, warranting the interference of the court by injunction, and the plaintiffs, if not for themselves, certainly for the public, had a right to maintain the action.
The allegations in the petition being admitted as true, the proceedings by the defendant railway company were wholly without warrant in law and the demurrer was not well taken.
The filing of the supplemental petition, however, changes the entire complexion of the case, and it must be determined upon the facts alleged in the petition and supplemental petition.
It now appears from the pleading that the defendants are proceeding under the act entitled “An act to abolish dangerous grade crossings” (O. L. Yol. 90, page 359, Sections 3337-8-17, Revised. Statutes), and that so far as they have proceeded the proceedings are regular and in compliance with such act, and the demurrer will be treated as a motion to dissolve the orders.
While there may be some question as to the legal capacity of the plaintiffs, showing no injury other than that suffered by the general public, that is, the inconvenience experienced by them in common with all the rest of the members in the community to *344 maintain this suit on their behalf as individuals, I think there is no doubt that under the amendment permitted by the court, of their right to maintain the action as tax-payers, the prosecuting attorney, on request, having refused to bring the suit. Pierce v. Hagans, 79 O. S., 9.
The plaintiffs have and will have free .access to all their land by the highways. The burden that in going in some directions they may b'e obliged to go somewhat further than they otherwise would is alike common to all the public traveling these roads, and the fact of the proximity of their land to the roads does not make the damage, if any, peculiar or specific to them. It is of like kind to the public.
If the proceedings of the commissioners and the railway company are illegal and the contract about to be entered into unlawful, certainly, as tax-payers .affected by the unlawful proceeding and contract, they have a right to. be heard.
It is claimed on the part of the plaintiffs that the act is unconstitutional and all proceedings thereunder are void, and counsel have filed a very full and exhaustive brief in support of their contention. In maintenance of their proposition it is insisted by the plaintiffs :
’ First, that Section 1 of the act (0. L. 90, page 359, Section. 3337-8 of the Revised Statutes) grants no power, either.directly or by implication, to the commissioners or the railway company to vacate any portion of any public highway or change or turn a public highway or build a new way; or to abolish grade crossings and substitute underhead or overhead crossings in lieu thereof, save at the point, of the old intersection; that the commissioners have turned and changed the location of the Stoner road by turning it over the new way; that by their order that portion of the Stoner road north of the railroad to the point where it intersects with the Wenrick pike will be vacated; that such change of location and turn of the Stoner road and the vacation of that portion of the Stoner road can only be done under and by virtue of the statute relating thereto; that the provisions of the statutes regulating this authority delegated to the commissioners must be strictly construed.
Second, that the Legislature, having by an act passed October 20th, 1902, entitled “An act to provide for the organization of *345 cities,” etc. (O. L. 96, page 20, repealed, Sections 2304 and 2315 and Sections 2316 up to and including Section 2326 of the Revised Statutes), mentioned in Sections 2 and 8 of said act to abolish grade crossings, there is no provision whereby the plaintiffs can be heard on the question of damages or damages assessed.
That the control of public highways is in the Legislature, and that the Legislature may delegate this control to the county commissioners or other public officials, and that such delegated control must be exercised by such officials, in the manner directed by the law-making power, must be conceded, but it does not follow that the Legislature may not provide different ways as to the turning or alteration of roads in order to carry out its main purpose and object.
It must be conceded also that the Legislature has power to enact all needful laws to prevent accidents and to provide as well for the convenience, as the safety of the public while traveling on highways, crossings railroads, or while being transported on the cars of railroad companies.
To this end, if by the increase of the amount of travel at a grade crossing, or the number of trains running over the railroad, or by changes in the manner of running trains, or of the mode of travel on highways, or if by reason of any other change of circumstances, the Legislature should deem it best for the public interest and safety that a grade crossing should be abolished and it became necessary, in order to accomplish that purpose, that a road should be turned or changed or altered, it wordd be within the constitutional authority of the Legislature to forbid the continuance of the crossing, and require its change and to do such things as would be necessary to accomplish that purpose.
It must be conceded that the object and the purpose of the Legislature, by this act, was to abolish dangerous grade crossings, not to vacate or turn a public road.
Section 1 of the act provides:
‘ ‘ That if the * * * commissioners of any county in which outside of any municipal corporation, a railroad or railroads and any public road or highway cross each other at grade, and the directors of the railroad company or companies are of the opinion that the security and convenience of the public requires *346 that alterations shall be made in such crossings or in the approaches thereto, or in the location of the railroad or railroads or of the public way, or any grades thereof, so as to avoid a crossing at grade, or that such crossing should be discontinued with or without building a new way in substitution therefor, and if they .agree as to the alterations which should be made, such alterations should be made in the following manner.” * * *
Section 2 provides:
“When it is deemed necessary * * * by any county to join with any railroad company or companies in the alteration or abolition of any grade or other crossings * * * the commissioners of the county, by unanimous vote of all the members thereof, shall, by resolution, declare such necessity and intent, and shall state in such resolution the manner in which the alterations in the crossing are to be made, giving the method of constructing the new crossing with the grades for the railroad or railroads and the public way or ways. ’ ’
Section 3 provides, in substance:
“The time when the commissioners shall hear and determine whether the proposed improvement shall be proceeded with. If proceeded with, the necessary resolution by the commissioners, setting forth the plans and specifications of the proposed alteration and inprovement, ” etc.
Section 8 provides for the assessment and determination of damages.
These statutes must be read and construed in view of the obvious purpose to do away with grade crossings as far as possible. E. & A. F. R. Co. v. Co. Commrs., 116 Mass., 73-76.
It seems to the court that this act expressly contemplates that it may be necessary to make an alteration in the location of the public way. Clearly some change of necessity must be made.
There is nothing in the statute, either in direct language or by implication, that requires the keeping strictly within the existing highway.
The construction asked by the plaintiffs, that the new crossing must be at the old intersection, is too narrow and unwarranted by the language used.
The language of the statute seems to the court broad enough to admit of a larger and more liberal construction than this.
*347 The statute provides where the security and public convenience require, alterations shall be made in such crossings or the public way—there could be no alternative if confined to the exact point of intersection.
To adopt the construction insisted upon by the plaintiffs, no grade crossing could be abolished where a new underhead or overhead crossing could not, by reason of the situation or other circumstances, be constructed at the old intersection, no matter how dangerous and unsafe such grade crossing might be.
I am clearly of the opinion that under this act the commissioners, together with the railway company, have the power, when in their opinion it becomes necessary in order to carry out the obvious purpose of the act, to turn a road for a short distance wholly outside of its original location. This power, however, in general terms, should be limited and not extended further than to do what was reasonably necessary to accomplish the purpose, in view of the situation and all the other circumstances surrounding the improvement; and where so exercised, the fact that the location of a road is so changed that the original highway is not again entered save by and over another way, would not of itself be ground of interference by a court.
Some reasonable descretion and flexibility to the power of the commissioners must of necessity be given, as each ease must be determined by its own circumstances.
On a careful examination of the resolution passed by the commissioners, the court is unable to find anything in it which, in terms or by implication, discontinues or vacates any part of the Stoner road, and such order will not and can not have the effect, by implication, or .otherwise, to discontinue any part of such road except such as is necessarily-discontinued by giving up of the crossing.
The order that an alteration be made in the crossing so that it shall not be at grade, necessarily implies a discontinuance of so much of the road as is in the location of the railroad; and there is nothing in the pleadings to show an intention of discontinuing anything further, and I find nothing in the record to show that the change contemplated is any greater than is necessary in order to -do away with the crossing at grade.
*348 There is no suggestion that any simpler scheme would have been practicable. The argument addressed has been merely that the authority given by the statute does not extend so far as to warrant the change which is proposed.
The language employed by the Legislature in this act is exactly the same as employed by the Legislature in the Massachusetts act. The Supreme Court of Massachusetts, in quite a number of cases, have had this statute under consideration and in all cases they have maintained the power of the commissioners to do all things reasonably necessary in order to make a safe and convenient overhead or underhead crossing, even to departing reasonable distances from an existing highway. Smith v. Boston, 7 Cushing, 254; Chandler v. R. R. Commrs., 141 Mass., 208; Davis v. Co. Commrs., 153 Mass., 218; Norwood v. N. Y. & New Eng. R. R. Co., 161 Mass., 259; In re Newton, Petitioner, 172 Mass., 5.
The second proposition contended for by the plaintiffs is that no provision is made whereby the plaintiffs can be heard in reference to the damages sustained. That the repeal of Sections 2304, 2315, 2316, to and including 2326, Revised Statutes of Ohio, have deprived them of any remedy.
It is a well known rule of statutory construction that where a statute is incorporated in another by reference the effect is the same as if provisions of the former were re-written in the latter for all purposes of the latter statute; and the repeal of the former statute does not repeal its provisions so far as they have been incorporated in the act which is not repealed. Sutherland’s Statutory Constructions, Section 257.
Mr. Endlieh, in his work, says:
“Where the provisions of a statute are incorporated by reference in another and the earlier statute is afterwards repealed, the provisions so .incorporated obviously continues in force so far as they form part of the second enactment.” Endlieh on Interpretation of Statutes, 492.
It will be observed that Sections 2304 and 2315 are made part of Section 2 of the act by direct reference and incorporation, and that Sections 2316 to 2326 inclusive are made part of Section 8 of the act by direct adoption.
*349 The court is of the opinion that these sections, so far as the act to abolish grade crossings is concerned, are still in force and are applicable in all eases where the proceedings are before the county commissioners.
The court finds nothing in the present case warranting the court to interfere by injunction on account of an unreasonable and unnecessary abuse of the power of the commissioners in making the change, and the temporary injunction heretofore granted and the restraining order will be dissolved and the petition dismissed at the costs of the plaintiffs.