SELECTMEN OF WESTBOROUGH & another, petitioners.

Suffolk. October 6, 1897. — November 23, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, & MORTON, JJ.

*Abolition of Highway and Railroad Crossings at Grade — Confirmation of Report of Commissioners — Relocation of Railroad Tracks — Change of Position of Railroad Station — Cost of Abolishing Grade Crossing — Discontinuance of Way — Bridges — Extent of Grading.*

The objection that the alteration proposed by commissioners appointed under St. 1890, c. 428, upon a petition for the abolition of the crossing at grade of a highway by a railroad, is in effect a relocation of a considerable extent of the railroad company's tracks, and is more extensive than is warranted by law, cannot prevail, if the alteration, though extensive, appears to be in substance what was contemplated in the original petition, and the court has nothing before it which enables it to see that the purpose could be accomplished in any better or cheaper way.

An alteration proposed by commissioners appointed under St. 1890, c. 428, upon a petition for the abolition of the crossing at grade of a highway by a railroad, may include a change in the position of a railroad station.

Commissioners appointed under St. 1890, c. 428, upon a petition for the abolition of the crossing at grade of a highway by a railroad, are not required to prescribe in their report a manner of determining the actual cost of abolishing the grade crossing.

Commissioners appointed under St. 1890, c. 428, upon a petition for the abolition

of the crossing at grade of a highway by a railroad, may discontinue so much of public ways as is contained within the land taken for the new location of the railroad.

It cannot be said that the report of commissioners appointed under St. 1890, c. 428, upon a petition for the abolition of the crossing at grade of a highway by a railroad, does not specify the general manner of construction, or prescribe the manner or limits within which the alterations shall be made, in such manner as the law requires, and that it is vague and indefinite as to bridges, and as to extent of grading, if the report calls for three bridges all to be "suitable" and provides the details for their construction, and no particulars are pointed out in respect to which the specifications as to the extent of grading are deemed insufficient, such specifications appearing to the court to be full and precise.

PETITION, under St. 1890, c. 428, by the Selectmen of the town of Westborough and the Directors of the Boston and Albany Railroad Company, for the abolition of certain grade crossings in said town. Hearing in the Superior Court, before *Richardson*, J., who reported the case for the determination of this court. The facts appear in the opinion, and in a note of the reporter thereto.

*Samuel Hoar*, for the Boston and Albany Railroad Company.

*W. S. B. Hopkins*, (*E. C. Bates* with him,) for the Selectmen of Westborough.

*F. T. Hammond*, Assistant Attorney General, for the Commonwealth.

ALLEN, J. This was a joint petition of the Selectmen of Westborough and the Directors of the Boston and Albany Railroad Company, brought under the provisions of St. 1890, c. 428, to bring about the abolition of certain grade crossings in Westborough. It may be that, strictly speaking, the selectmen in joining in this petition did not act as agents of the town. But due notice was given to the town and to the Commonwealth, and after the return day of the notice, the Commonwealth, the selectmen, and the directors agreed upon three persons as commissioners, who were accordingly appointed. Public hearings were held from time to time in Westborough, and after the lapse of several months the commissioners filed their report. At the hearing upon the report, which was eighteen months after the filing thereof, the town of Westborough, and the selectmen who were then in office, (who were not the same persons as those who brought the petition,) filed objections to the confirmation of

the report. At the hearing upon these objections, no evidence other than the decision of the commissioners, and the plan which was filed as a part thereof, was offered to the court.

So far as appears, at the hearings before the commissioners no objection was raised by the town to the changes prayed for in the petition; and these, so far as we can see, were in sub-stantial accordance with those reported by the commissioners. There is no suggestion that the commissioners acted in bad faith, and no imputation upon their fairness or impartiality is made. No scheme or plan of alterations was laid before the court by which the substantial results desired could be accom-plished in a better way, or at less cost. Nor in the argument before us is it pointed out how a less extensive change would carry out the purpose in view.

The first objection insisted on at the argument before us is that the proposed alteration is in effect a relocation of a consid-erable extent of the railroad company's tracks, and is more extensive than is warranted by law. The statute clearly con-templates some alteration in the location of a railroad, in order to carry out the purpose in view, which is to promote the aboli-tion of grade crossings; but it does not attempt to define the extent to which such alteration may be carried. In a case aris-ing under a statute authorizing county commissioners to make alterations in the location of a railroad or of a highway or town way, in order to do away with grade crossings, the difficulty of defining the limits of such changes as were authorized was rec-ognized, and it was said, in general terms, that under the guise of doing away with a crossing at grade the authority of the commissioners would not extend further than to do what is reasonably necessary to accomplish the purpose, in view of the situation of the ground, and of other circumstances. *Davis* v. *County Commissioners*, 153 Mass. 218. In the present case, the alteration, though extensive, appears to be in substance what was contemplated in the original petition, and we have nothing before us which enables us to see that the purpose could be accomplished in any better or cheaper way. A reasonable pre-sumption must be made in favor of the plan and result arrived at by the commissioners. This objection therefore cannot pre-vail. See *Cambridge* v. *County Commissioners*, 167 Mass. 137;

*Old Colony Railroad, petitioner,* 163 Mass. 356; *Norwood v. New York & New England Railroad,* 161 Mass. 259.

The next objection is that the report involves a substantial alteration in the location of the railroad station in Westborough. According to the petition and the report of the commissioners, the change of location would remove the railroad track from the station, and the position of the station would naturally and necessarily be changed, as an incident of the change of the location of the track. The authority conferred by the statute to make changes of location is not limited to changes which will not affect stations. The fact that the station as well as the track is changed furnishes no reason for declaring the changes invalid in law.

It is further objected that the report of the commissioners prescribes no manner of determining the actual cost of abolishing the grade crossing. But the statute does not require this to be done. The commissioners are to determine which party shall do the work, or apportion the work between the railroad company and the city or town; and after deducting the percentage of the actual cost which the railroad company is to pay, they are to apportion the remainder of the cost, under a certain limitation, between the Commonwealth and the city or town. St. 1890, c. 428, § 3. They are not required to ascertain or estimate the actual cost, or to prescribe any manner in which this shall be done.

The town also contends that the statute does not authorize the discontinuance or obstruction of portions of High, Summer, Water, or Willow Streets. Section 4 of the act provides that, if the commission decide that any portion of an existing public way should be discontinued, it shall so specify, and it shall further specify what land or other property it deems necessary to be taken. The report of the commissioners specified in detail the land taken for the new location of the railroad, and added, " So much of said Willow, High, Water, and Summer Streets is hereby discontinued as lies within the parcel of land hereinbefore taken for the new location of the railroad." Such discontinuance was within the authority conferred by the statute.

Finally, it is urged that the report of the commissioners does not specify the general manner of construction, or prescribe the

manner or limits within which such alterations shall be made, in such manner as the law requires; and that it is vague and indefinite as to bridges, and as to extent of grading. The report calls for three bridges, namely, a railroad bridge over East Main Street, a bridge for a private way over the railroad track, and a bridge for Milk Street over the railroad track. These are all to be "suitable" bridges, (see *Worcester* v. *Railroad Commissioners*, 113 Mass. 170, 171,) which means that they shall have relation to what is usual, and is ordinarily deemed necessary, under similar circumstances; and details for their construction are given, which are to be taken in connection with the general requirement that the bridges shall be suitable. Looking at all of these specifications, we cannot see that they are open to criticism as vague and indefinite. And the specifications as to the extent of grading appear to us to be sufficiently full and precise.* No particulars are pointed out, in respect to which they are deemed insufficient.

No error of law appearing in the case as submitted to us, the order must be,

*Report of commissioners confirmed.*

---

* The report as to East Main Street was as follows: "The location of East Main Street remaining unchanged, the grade of said street shall be lowered and a suitable bridge shall be built over it to support the railroad tracks so as to leave a clear head-room of at least twelve feet above the new grade of the street. The elevation of the grade of said East Main Street under the bridge shall be fourteen and twenty-five one-hundredths feet below the grade of the top of the rails of said company's track. From a point in said street eighty-five feet northerly from the base line of the new location of said railroad the grade shall rise northward at a rate of two feet in one hundred feet until said new grade shall intersect the present grade, and from a point in said street sixty-four feet southerly from said base line of location the grade shall rise southward at a rate of three and one half feet in one hundred feet until said new grade shall intersect the present grade. The said East Main Street shall be graded to its full width, and the roadway shall have a dressing of good gravel to the depth of ten inches, with the proper crowning in the middle."

Similar provisions as to the extent of grading in the other cases were inserted.