MAYOR AND ALDERMEN OF NEWTON, petitioner.

Middlesex.   December 15, 1897 — August 31, 1898.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Abolition of Highway and Railroad Crossings at Grade — Exceptions to Auditor's Report — "Actual Cost of Alterations" — Statute.*

The objection, that the Commonwealth filed no exceptions, but only objections, to the report of an auditor appointed under St. 1890, c. 428, § 7, upon the allow-

ance of expenses incurred in the abolition of a grade crossing, if not taken in the Superior Court, is not open in this court upon a report of the case.

As part of the "total actual cost of the alterations" prescribed by commissioners appointed under St. 1890, c. 428, upon a petition for the abolition of the crossing at grade of a highway in a city by a railroad, the cost of a new station there cannot be allowed, but only what the expense of altering the old station and lowering it to meet the tracks and providing suitable approaches would have been; nor the cost of a ninety-five pound rail to replace a seventy-two pound rail in use before the alterations, but only the expense of a new seventy-two pound rail as laid, less the value of the old rails; nor an amount as an investment return for the use of the railroad in removing material and for interference with its other traffic.

PETITION, under St. 1890, c. 428, as amended, by the mayor and aldermen of Newton, for the abolition of certain grade crossings in that city. Hearing in the Superior Court, before *Richardson*, J., who reported the case for the determination of this court. The facts appear in the opinion.

The case was argued at the bar in December, 1897, and afterwards was submitted on briefs to all the justices except *Holmes*, J.

*W. S. Slocum*, for the petitioner.

*F. T. Hammond*, Assistant Attorney General, for the Commonwealth.

*S. Hoar*, (*W. Hudson* with him,) for the Boston and Albany Railroad Company.

MORTON, J. This was a petition by the mayor and aldermen of Newton, under St. 1890, c. 428, and acts in addition and amendments thereto, for the abolition of certain grade crossings in the city of Newton. Commissioners were duly appointed by the Superior Court, as provided by § 1 of the act, and made a report specifying the alterations to be made, which was confirmed by the court, and the city and the railroad company proceeded to make the alterations as directed. Subsequently an auditor was appointed pursuant to § 7, to whom were submitted accounts of expenses alleged by the railroad company to have been incurred by it in making the alterations. The auditor made a report, which the railroad company moved to confirm, and to which the city filed objections and exceptions, and the Commonwealth filed objections. The case came on for hearing, and thereupon the questions arising were, at the request of all parties, reserved and reported for the determination of this court.

The railroad corporation objects that the Commonwealth filed no exceptions in the Superior Court. But the point does not seem to have been taken there, and comes too late when taken in this court for the first time. We assume that the rules in regard to equity practice apply to this case.

The questions presented relate to the cost of the new station, to what was paid for new rails, and to what was allowed to the railroad corporation as an investment return, and for interference with its other traffic. The railroad corporation contends that these items constitute a part " of the total actual cost of the alterations," within the meaning of the statute.

One question is, What do alterations include? And the answer depends on the construction to be given to the statute. In construing the statute regard is to be had " to the nature of the subject matter, the various interests, public and private, which are to be affected." *Boston & Albany Railroad* v. *County Commissioners*, 116 Mass. 73, 76. The object of the statute is to promote the safety of travellers and property on highways, and of passengers and property on railroads, and to remove the obstructions to highways and railroads which are caused by grade crossings. It seeks to do this by abolishing grade crossings. It is just and reasonable that a part of the expense of doing this should be borne by the Commonwealth and by the cities and towns, and the statute so provides. But for obvious reasons it is the policy of the State that much the larger part of the expense should be borne by the railroads, and this policy is expressed in the statute.

The statute applies to existing conditions, and contemplates the abolition of grade crossings by means of changes and alterations in existing conditions. Except so far as is necessary to accomplish the proposed abolition, the existing conditions are, for aught that appears, to continue substantially as before. If the proposed abolition cannot be accomplished except by discontinuing an existing way and building a new way, or by relocating the railroad, that may be done. But this does not alter the fact that the statute contemplates a continuance of existing conditions, subject to such changes in them as may be required to accomplish the abolition of crossings at grade. This does not prevent the railroad company, or a city or town, from making at its own expense any improvements which it may deem advisable in

view of the changes which have been or may be ordered; but we think that it confines the expense which is to be apportioned to that which is incurred in making the alterations which are expressly directed, and to that which is rendered necessary to adapt existing structures and arrangements to such alterations. Such last named expense must be considered as incident to and as a part of that contemplated by the alterations which are ordered. It is manifest, we think, that it could not have been intended that a city or town, or a railroad company, could make such improvements as it chose in connection with or as a part of the alterations required, and insist that the expense of carrying them out should be reckoned as a part of the actual cost of the alterations. In ascertaining the cost, allowance is not to be made for the greater value over the old of the new work and new material and new appliances which replace old work and old material and old appliances, and which in addition to being new may perhaps be better of their kind, or for the fact that the construction may be superior in other respects to what it was before. These are incidental matters which cannot be taken into account in arriving at the actual cost. *Norwood* v. *New York & New England Railroad*, 161 Mass. 259, 267. Neither do we think that the statute should be construed so strictly as to limit the actual cost to expenditures made in literal compliance with the directions of the commissioners, and to exclude all others. " The total actual cost of the alterations " well may be held to include, not only expenditures made directly upon the alterations themselves, but also those which are rendered necessary to restor: existing buildings and structures relatively to their former condition, and to replace in a proper and workmanlike manner the rails, ties, platforms, and other things which have been removed or damaged in the work of alteration. See *Chase* v. *Worcester*, 108 Mass. 60.

Applying the principles thus laid down to the case before us, we think that the auditor erred in allowing the cost of the new station, and that the sum allowed should have been the expense of altering the old station and lowering it to meet the tracks, and providing suitable approaches, which the auditor finds would have been $11,000.

We think that there was also error in allowing the cost of a ninety-five pound rail to replace the seventy-two pound one

which was in use before the alterations. It seems to be conceded that the old rails are to be accounted for, and the most which we think that the railroad company can justly claim is the expense of a new seventy-two pound rail as laid, from which should be deducted the value of the old rails.

The questions which we have been considering, and those which we are about to consider, did not arise in *Westborough, petitioner*, 169 Mass. 495, and that case has therefore no bearing upon this. The remaining item relates to the amount allowed to the railroad corporation as a return upon its road as an investment for its use outside the commissioners' lines and for interference with its other traffic. The alteration consisted, amongst other things, in depressing the tracks, and this required the removal of large quantities of material. There was no place inside the commissioners' lines where this could be dumped, and the railroad company procured the most available locations, as the auditor finds, and for convenience and expedition in doing the work, established two dumping grounds, — one east and one west of the commissioners' lines. These were at the busiest points on the railroad corporation's road, and caused interference with its other traffic. We understand from the auditor's report that the railroad corporation " has been allowed in former auditings for the actual expense of doing the work, viz. for the use of locomotives and cars, fuel, repairs, etc., and the payroll of all men employed," and that the sum allowed by the auditor represents " a reasonable advance upon the actual cost," so as to give the railroad corporation a proper return upon the portion of its road thus used, and compensation for the interference with its other traffic. Some emphasis appears to be laid in the auditor's report, and also in the brief of counsel for the railroad, on the fact that the material was transported to points outside the commissioners' lines. We do not see the materiality of that fact. The railroad corporation was entitled to the actual expense of removing such material as the alteration rendered it necessary to remove, whether the points to which it was necessary to remove it were within or without the commissioners' lines. And if the railroad corporation is entitled to an investment return upon the portion of its road outside the commissioners' lines that was used in transporting the material, we do not see why it is not

entitled to a like return upon that portion which was within the commissioners' lines, and also upon the capital invested in locomotives, cars, etc. But we think that by the words " actual cost " it was intended to exclude anything in the nature of a profit, or return upon the investment. " Actual cost " means real cost as distinguished amongst other things from estimated cost, (*Lanesborough* v. *County Commissioners*, 6 Met. 329,) or from market price, which may include matters that do not enter into the real cost. *Alfonso* v. *United States*, 2 Story C. C. 421. *United States* v. *Twenty-six Cases of Rubber Boots*, 1 Cliff. 580. The word " cost " is of limited significance, — much narrower than " damages," for instance, which in the case of laying out one railroad over and across another has been held not to include compensation for the interruption and inconvenience to the business of the latter occasioned thereby. *Massachusetts Central Railroad* v. *Boston, Clinton, & Fitchburg Railroad*, 121 Mass. 124. In *Lexington & West Cambridge Railroad* v. *Fitchburg Railroad*, 9 Gray, 226, the " actual cost " of running trains was held not to include interest on cars, and to mean money actually paid out. And in *Alfonso* v. *United States*, under the revenue act of 1799, c. 128, § 66, it has been held that the words " actual cost " meant the actual price paid in a *bona fide* purchase, and not the market value, thus excluding any idea of profit or return. See also *United States* v. *Sixteen Packages of Goods*, 2 Mason, 48; *United States* v. *Tappan*, 11 Wheat. 419, 423.

The object of the provision which we are considering was, it seems to us, in view of the relations of the parties to the work and to each other, to exclude in the accounting between them any profit, and everything except what fairly might be reckoned as a part of the real cost of the alterations; and it appears like a contradiction of terms to speak of an advance upon the actual cost as constituting a part of that cost. Not much light, if any, can be got from the cases in regard to the compensation to be paid by one railroad to another for drawing its passengers, merchandise, and cars over the railroad of the other, and for providing depot accommodations, and for the use of its tracks. See *Boston & Worcester Railroad* v. *Western Railroad*, 14 Gray, 253; *Metropolitan Railroad* v. *Quincy Railroad*, 12 Allen, 262; *Metropolitan Railroad* v. *Highland Street Railway*, 118 Mass. 290;

*Cambridge Railroad* v. *Charles River Street Railway*, 139 Mass. 454. Compensation is a term of larger scope than cost, and especially than actual cost. In one instance the statute uses the phrase " reasonable compensation." St. 1845, c. 191, § 2. *Boston & Worcester Railroad* v. *Western Railroad, ubi supra.* It is doubtful if that adds anything, since, from the nature of the case, the compensation must be reasonable. In fixing the compensation in the cases referred to, a suitable return upon the capital invested was included. But in the present case the accounting is expressly limited by statute to " the total actual cost," and unless compensation is held to mean the same as " actual cost " (which we doubt), those cases throw no light on this. The contention of the railroad corporation is, in effect, that a suitable return on the capital invested constitutes a part of the actual cost of the alterations. But, though in a sense the return on capital which one would have received for work done may be said to be a part of the cost, we do not think that in ordinary usage the term " real cost," or " actual cost," includes a return upon the capital invested. After allowing all the actual expenses of doing the work, that seems to us more in the nature of profit than of cost.

The result is, that a majority of the court think that on the first item the sum of $11,000 should be allowed, on the next item a sum equal to the cost of a new seventy-two pound rail as laid, less the value of the old rails, and the third item disallowed altogether.                                    *So ordered.*