PROVIDENCE AND WORCESTER RAILROAD COMPANY
& another, petitioners.

Worcester.   October 5, 1898. — October 20, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*Grade Crossing — Statute — Auditor — Report — Equity Jurisprudence and Rules — Fees of Counsel and Engineers — Town — " Costs and Expenses."*

Although the language of St. 1890, c. 428, entitled " An Act to promote the abolition of grade crossings," is that the report of the auditor when confirmed by the court shall be final, still it is not to be construed as taking away the general authority of a single justice to report to the full court questions of law arising in equity.

It is too late to raise in this court the point, not taken in the Superior Court, that a town has no standing here because it did not file in the Superior Court objections to the report in accordance with Equity Rules XXXI. and XXXII. of that court.

Expenses incurred by a town in employing counsel to appear at hearings in the Superior Court in opposition to the appointment of a commission to make separation of a grade crossing under St. 1890, c. 428, to represent the town in the selection of commissioners after the decision of the court to appoint, to oppose before the commission any abolition whatever, and to advocate before the commission, after its decision to abolish the crossing, a different plan of separation from that presented by the railroad company, and expenses incurred by it in employing a civil engineer to prepare and present plans to the commission, which were not adopted, it appearing that the town, by vote at a town meeting, appointed a committee with authority to employ counsel and an engineer for the purposes stated, and that the reasonableness of the charges was not in dispute, cannot be allowed by the auditor as part of the " cost of the

hearing," under § 3 of the statute, or as part of the "expense incurred by the town," under § 7, to be apportioned between the railroad company, the Commonwealth, and the town.

PETITION, by the Directors of the Providence and Worcester Railroad Company, under St. 1890, c. 428, entitled "An Act to promote the abolition of grade crossings," for the abolition of two grade crossings in Uxbridge.

The supplemental report having been recommitted to the auditor by the Superior Court, with instructions to find and report to that court the facts relating to certain items of expense, the auditor found and reported, and a hearing was had before *Richardson*, J., who disallowed the items, the nature of which appears in the opinion, and reported the case for the determination of this court.

*J. L. Hall*, for the petitioners.

*G. S. Taft*, for the town of Uxbridge.

HAMMOND, J.    The items in dispute were disallowed by the auditor and by the justice of the Superior Court, and the question whether this was correct comes to us upon a report made by the justice.

Although the language of the statute is that the report when confirmed by the court shall be final, still it is not to be construed as taking away the general authority of a single justice to report to the full court questions of law arising in equity. Pub. Sts. c. 151, § 20.    St. 1883, c. 223, § 2.

The petitioners contend that the town has no standing here, because it did not file in the Superior Court objections to the report, in accordance with Equity Rules XXXI. and XXXII. of that court.    But the point does not seem to have been taken there, and it is too late to raise it now.

We are therefore brought to the question in the case, which is whether expenses incurred by a town in employing counsel to represent it in the Superior Court and before a commission appointed to make separation of a grade crossing under St. 1890, c. 428, and in employing a civil engineer to prepare plans to present to the commission, should be allowed by the auditor as part of the "cost of the hearing," under § 3, or as part of the "expense incurred by the town," under § 7 of that act, to be apportioned between the railroad company, the Commonwealth, and the town.

The legal services consisted in part in appearing at hearings in the Superior Court in opposition to the appointment of a commission, and representing the town in the selection of commissioners after the decision of the court to appoint; in part in opposing before the commission any abolition whatever; and in part advocating before the commission after its decision to abolish the crossing a different plan of separation from that presented by the railroad company.

The engineering services consisted in preparing and presenting to the commission the town plans for the abolition. The commission adopted the railroad plan. The town, by vote at a town meeting, appointed a committee with authority to employ counsel and an engineer for the purposes stated. The reasonableness of the charges is not in dispute.

The seventh section of the statute simply provides the machinery by which the items named in the third section may be apportioned, and cannot be held to vary them in any way.

The decision of the question therefore depends upon the interpretation to be given to the following language of the third section : " The railroad companies shall pay sixty-five per centum of the total actual cost of the alterations, including in such cost the cost of the hearing and the compensation of the commissioners and auditors for their services, and all damages, including those mentioned in section five of this act." These items cannot be considered as a part of the total cost of the alterations. They were incurred before the decree for alterations was made, and in opposition to the decree, and not for the purpose of performing it. Instead of being incurred in carrying out the decree, they were incurred to prevent it. In these respects the case materially differs from *Boston & Albany Railroad* v. *Charlton*, 161 Mass. 32. In this latter case the expenses were incurred by the town in a *bona fide* attempt to ascertain the land damages.

Nor do we think these items can be allowed as a part of the " cost of hearing " before the commission. A review of the history of the legislation on this matter is here instructive. When railroads were first established, the acts of incorporation usually authorized them to raise or lower highways so as to pass under or over them, and forbade the obstruction of highways. St. 1826,

c. 183, § 6.  St. 1829, c. 26, § 5.  St. 1830, c. 4, § 11.  St. 1830, c. 93, § 9.  St. 1830, c. 94, § 10.  St. 1830, c. 95, § 11.  St. 1833, c. 187.  These provisions were incorporated in Rev. Sts. c. 39, §§ 66, 67, and 68.  The first statute authorizing proceedings for the abolition of grade crossings was St. 1842, c. 22: "If the selectmen of any town, or the mayor and aldermen of any city, wherein any turnpike, highway, or town way, crossed by any railroad, on a level therewith, is situated, shall be of opinion that it is necessary for the security of the public that said turnpike, highway, or town way should be raised or lowered, so as to pass over or under said railroad, said selectmen or mayor and aldermen may, in writing, request the corporation to which said railroad belongs to raise or lower said ways; and if said corporation shall neglect or refuse so to do, said selectmen or mayor and aldermen may apply to the county commissioners of the county within which said town is situated to decide upon the reasonableness of such request; and if said commissioners, after due notice and hearing the parties, shall decide that the raising or lowering of said ways is necessary for the security of the public, said corporation shall comply with said decision, and shall pay the costs of the application; and if the said commissioners shall be of opinion that such alteration of said ways is not necessary, the said selectmen or mayor and aldermen shall be liable to pay the costs of their application."  This statute was re-enacted in Gen. Sts. c. 63, §§ 53, 54.  This last statute was repealed by St. 1872, c. 262.  Section 1 provides that, if upon application the county commissioners decide that no alteration is necessary, "the party making the application shall pay the costs."  Section 2 is as follows: "The party by whom such decision shall be carried into effect shall be determined upon the award of a commission consisting of three disinterested persons, one of whom shall be named by the county commissioners, if the way that crosses or is crossed by the railroad is a highway, or by the selectmen or mayor and aldermen if it is a town way; one by the railroad corporation interested; and the third shall be a member of the board of railroad commissioners designated by said board.  Said commission shall be named within thirty days after the decision that an alteration is necessary, and shall meet within sixty days; and the said commission shall also de-

termine by what party all charges and expenses occasioned by making such alteration, and all future charges for keeping in repair such crossing and the approaches thereto, as well as all costs of the application to the county commissioners, or of the hearing before said commission, shall be borne; or said commission may apportion all such charges, expenses, or costs between the railroad corporation and the town, city, or county in which said crossing is situated, and the award of said commission shall be final." And this is substantially re-enacted in St. 1874, c. 372, §§ 96, 98, and in Pub. Sts. c. 112, §§ 129 and 131.

Then comes the statute in question, — St. 1890, c. 428. It will be observed that in the previous statutes the costs which were to be apportioned were, until St. 1872, c. 262, "the costs of the application to the county commissioners"; but when special commissioners were appointed, and up to St. 1890, c. 428, the costs were the costs of the application to the county commissioners, and of the hearing before said special commissioners.

Since, under St. 1890, c. 428, the petition was to be made to the Superior Court, there was no occasion to continue the provision concerning costs before the county commissioners, and so that concerning the cost of hearing before the special commissioners only was retained.

There can be no doubt that the same general kind of expense is meant by the term "cost of hearing" as by the cost of "application before the county commissioners." Prior to St. 1872, c. 262, the whole matter of alterations was passed upon by the county commissioners, and in that case there were no other costs to be paid but those of the application to them; but when a part of the work was delegated to a special commission, then it became necessary to include the cost of hearing before the latter in order to cover some of the cost which had theretofore come in under costs of application to the county commissioners.

A similar provision is contained in the act for laying out highways. Pub. Sts. c. 49, § 2. But these provisions concerning costs before the county commissioners never have been held to relate to costs between the parties, or to the costs incurred by the respective parties in the preparation and trial of their respective sides of the controversy, but merely to the costs incurred

by the county commissioners or the tribunal as a court, and they are simply intended to protect the public treasury from the expense of holding the court and of investigating the questions presented. *Gifford* v. *Dartmouth*, 129 Mass. 135. No part of the items in question were incurred for that purpose, and they were rightly disallowed.

*Items disallowed, and decree accordingly.*