SELECTMEN OF WESTBOROUGH & another, petitioners.

Worcester.    December 4, 1902. — September 2, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Grade Crossing.    Damages.    Limitations, Statute of.*

Where the report of commissioners appointed under St. 1890, c. 428, on a petition to abolish certain grade crossings, requires a new location of a railroad passenger station at a point thirteen hundred feet from the old station, and the new station is constructed by the railroad company practically of the same size as the old one at a cost which an auditor finds to be fair and reasonable, the railroad company is entitled to be allowed the cost of the new station as part of the cost of the alterations and should not be restricted to the actual cost of reproducing the old station.   In such a case the railroad company cannot be compelled to account for the value of land owned by it in fee on which the old station stands and which after the alterations is used by the railroad company for freight purposes.

In proceedings under St. 1890, c. 428, for the abolition of certain grade crossings in a town, the town is not entitled to be allowed as part of the cost of the alterations a sum paid in settlement of land damages which were barred by the limitation of the act, the town having no right to waive the statutory bar as against the railroad company and the Commonwealth, even if it might do so for itself.

In proceedings under St. 1890, c. 428, for the abolition of certain grade crossings in a town, the town is not entitled to be allowed as part of the cost of the alterations the amount of expenses incurred by it for counsel and expert witness fees in disputing the allowance of certain items in the account presented by the railroad company and disallowed by the auditor in that account.

MORTON, J.    This is a petition under St. 1890, c. 428, by the selectmen of Westborough and the directors of the Boston and Albany Railroad Company for the separation and abolition of certain grade crossings in the town of Westborough.   The case has been here once before on the validity of the decision of the special commission, and is reported in 169 Mass. 495.   Since then the auditor has made a third report to which the town and the railroad company have both filed objections and exceptions. The case came up in the Superior Court for a hearing on the

report, and upon the exceptions and objections to the report, and thereupon the presiding judge reported to and reserved for this court the questions arising upon the report and the evidence reported therewith and to exceptions and objections thereto. The special commissioner's decision and plan and the decree of the court thereon are made a part of the auditor's report.

The questions are whether the cost of the new passenger station erected by the railroad company upon the location to which the railroad was changed shall be included as a part of the cost of the alterations, whether the value of certain land belonging to and occupied by the railroad company prior to the alterations in connection with the former passenger station shall be credited to the general account, and whether certain sums paid by the town in settlement of a claim for land damage and for counsel and expert witness fees shall be included in the cost of the alterations.

1. As to the cost of the new station. The auditor finds that the total cost is $16,716.33, and that this is fair and reasonable. But, relying apparently upon the case of *Mayor & Aldermen of Newton, petitioners*, 172 Mass. 5, and adopting the contention of the town, he finds that the railroad company is entitled to " only the actual cost of reproducing the old station in substantially as good a condition as it was on its old location." Certain other items connected with and growing out of the construction of the new station, and about which there is now no controversy and which therefore need not now be considered, are also allowed. The report of the commissioners provided that the railroad location should be changed from a point about twenty-five hundred feet easterly of the old station to a point about five thousand feet westerly of it, and moved northerly so that at the point where the new station was constructed it was about thirteen hundred feet from the old station. The old station was on Main Street, and so, as we understand the situation, is the new. The old station is of brick and is of the same size practically as the new. In order to remove it to the new location it would have to be moved through the public streets about fourteen hundred feet. The report of the commissioners does not provide in terms at least for the construction of a new station as a part of the alterations. But it was said when the case was here before that

" the position of the station would naturally and necessarily be changed, as an incident of the change of the location of the track." *Westborough, petitioner*, 169 Mass. 495, 498. Nothing is said in the commissioners' report about a removal of the old station, but we think that the reasonable construction of the report is that it contemplated the erection of a new station as a part of the alterations rendered necessary by the change in the location. The town does not, indeed, contend that a station is not to be provided as a part of and as incident to the alterations. But it relies upon the case of *Mayor & Aldermen of Newton, petitioners*, 172 Mass. 5, and contends that, according to the rules there laid down, the railroad is to be allowed only what it would cost to remove and fit up the old station, or to build a new one of similar size. But this case differs from the Newton case. In that case the new station was regarded rather as an improvement which the railroad company had availed itself, rightfully enough, of the changes required, to make, than as an alteration contemplated or required by the changes provided for. Moreover in that case the new station was upon the same site or substantially upon the same site as the old. In this case the decision of the commissioners required an entire relocation and removal of the tracks for a longitudinal distance of about a mile and a half, and the plan filed by them shows as a part of their report a new location of the station at a point eighteen hundred feet from and opposite to the old station. As already observed, we think that the report and plan of the commissioners contemplated the erection of a new station at the point thus designated, and not the removal of the old one to it. It appears that the new station is practically of the same size as the old, and there is nothing to show that the railroad company has availed itself of the opportunity afforded by the alterations required, to make extensive and expensive improvements which could not be fairly included as a part of the alterations, and the auditor expressly finds, as already observed, that the cost of the new station is fair and reasonable. We think that the ruling of the auditor limiting the railroad company to " the actual cost of reproducing the old station in substantially as good condition as it was on its old location " was wrong and that the company should have been allowed the cost of the new station. The fact that the

railroad company gets a new station in the place of the old one, and that the new station is or may be better in other respects than the old one, is an incidental matter which cannot be taken into account in arriving at the actual cost of the alterations. *Mayor & Aldermen of Newton, petitioners, ubi supra.* The view of the matter which we have taken renders it unnecessary to consider whether the commissioners could have required the old station to be moved to the new location. We may add in passing that the objection that such a removal would have to be through the public streets does not impress us very strongly. It is to be presumed that the officers of the town would have granted a request for such removal if the removal had been required as a part of the general scheme for separating and abolishing the grade crossings in question.

2. The old station was partly within and partly without the old location, and stood on land belonging in fee to the company. Part of the land was conveyed to it subject to restrictions requiring the company to establish and maintain a depot or place of deposit on the premises, and restricting the erection of any building within fifty feet of the street. One deed also contained the restriction that no tavern or victualling house should be erected on the land conveyed. The auditor finds that this land, comprising about fifty thousand square feet, is not necessary for railroad purposes, and that the value of it, with or without the restrictions as the court finds that it is or is not now subject to them, should be credited to the general account in computing the cost of the station. The old location over the land has not been discontinued, and the land is still used by the company for freight purposes, and the old passenger station still stands there.

There is no doubt that in arriving at the total actual cost of alterations rendered necessary by the separation of grade crossings under the statute providing for such cases, the cost is to be arrived at by a proper system of credits as well as by a proper system of debits. *Mayor & Aldermen of Newton, petitioners,* 172 Mass. 5. The account is to be debited with whatever the party charged with making the alterations has furnished or expended in money, labor or materials, with whatever in short constitutes a part of the cost, and is to be credited with what is received or realized or ought to be received or realized from the alterations.

Incidental benefits do not enter into the account. Neither does the question of betterments. The question in each case is one of cost; — the total actual cost of the alterations. Whatever on the one hand should be fairly reckoned as a part of the cost of the alterations should be debited to the account, and whatever on the other may fairly be reckoned as a proceed of the alterations should be credited to the account. If, for instance, a railroad company in changing its location as required for the separation of grade crossings should in constructing its road in its new location open therein in the process of such construction a valuable quarry and should sell the stone which it got out, or should open a valuable sand bank and should sell the sand, or should have on hand as the result of the alteration a quantity of old rails which it could sell or use, what was received from the stone or sand and the value of the old rails should be credited to the general account. But in the present case, the land, the value of which the town seeks to have credited to the general account was not a proceed of the alteration, and was not conveyed to the company, as a gift or otherwise, in consequence of it. The company had owned it for many years. It had the right, subject to the restrictions on which it held it, to use it for any purpose that it saw fit, and it is still using it for railroad purposes and for aught that appears will require it in its business. And we do not see how or on what ground it can be compelled to account for its value, restricted or unrestricted, because the passenger station has been moved somewhere else and the town and the Commonwealth are obliged to pay a part of the cost of the new station. We think therefore that the auditor was in error in crediting to the account the sum of $3,500 for the "value of the portion of the old location lying between the east side of Main Street and westerly line of the freight yard." The fact that, under some understanding or arrangement which is not before us, the company sold and conveyed to the town so much of its location as was on the westerly side of Main Street and that the proceeds were credited to the general account in a previous accounting has, of course, nothing to do with the question now before us.

3. The remaining questions relate to the sums paid by the town in settlement of a claim for land damages and for counsel

and expert witness fees. The sums were disallowed by the auditor and we think that his ruling was right. The sum paid in settlement of land damages was paid after the claim had become barred by the statute. No suit or petition had been brought by the landowner, and so far as appears the town was under no legal liability to pay. Whatever the town could have done if it and the landowner had been the only parties interested, we do not think that it could waive the statutory bar as against the other parties to the accounting. The counsel and expert witness fees were incurred in disputing at a former hearing on an accounting the propriety, both in law and fact, of the allowance of certain items in the account presented by the railroad company, — being the same items disallowed by the auditor in the railroad company's account. We think that these expenses are to be regarded as incurred by the town in the preparation and trial of their side of a disputed controversy, rather than as constituting a part of the cost of the alterations or of the cost of the hearing before the commission. See *Providence & Worcester Railroad, petitioner,* 172 Mass. 117, 121.

The result is that the exceptions of the railroad company are sustained and those of the town are overruled.

*So ordered.*

*A. P. Rugg,* (*A. F. Brown* with him,) for the selectmen of Westborough.

*S. Hoar,* (*W. Hudson* with him,) for the Boston and Albany Railroad Company.