MAYOR AND ALDERMEN OF WORCESTER *vs.* BOSTON AND ALBANY RAILROAD COMPANY & others.

Worcester.   September 30, 1912. — February 25, 1913.

Present: MORTON, LORING, BRALEY, & DE COURCY, JJ.

*Grade Crossing Acts.   Practice, Civil,* Auditor. *Worcester.   Words,* "Actual Cost."

In proceedings under a special statute for the abolition of certain grade crossings, which incorporates by reference, except as otherwise provided, the provisions of St. 1900, c. 387, and acts in amendment thereof "the total actual cost" of the alterations which is to be apportioned among the contributing parties is the whole amount expended on the entire work with such allowances and deductions, if any, as should be made in order to arrive at a correct result, and an auditor appointed under the provisions of St. 1900, c. 387, § 7, is not bound to allow as such actual cost expenditures of a railroad corporation, made in doing the work imposed upon it by a decree of the Superior

Court, merely because such expenditures were made honestly and in good faith, unless the railroad corporation also exercised due care and diligence to protect the interests of the contributing parties.

In proceedings under St. 1900, c. 387, as amended by St. 1902, c. 508, St. 1903, c. 115, and St. 1905, c. 422, providing for the abolition of grade crossings in the city of Worcester, an order of the Superior Court required the construction by the Boston and Albany Railroad Company of "suitable retaining walls and masonry" for the railroad and tracks of that company affected by the changes. That company asked to be allowed for the amount of money paid by it upon contracts for the construction of concrete masonry. It appeared that the company, in good faith and for the purpose of expediting the work, had permitted the use of unscreened gravel instead of screened gravel until a screening plant could be completed and placed in operation, that the use of the unscreened gravel reduced the cost of the concrete to the contractor but that the railroad company paid for this concrete the full contract price, for which it asked to be allowed as against the Commonwealth, the New York, New Haven and Hartford Railroad Company and the city of Worcester. It was found by the auditor, to whom the case was referred under the provisions of the statute, that the masonry thus furnished by the Boston and Albany Railroad Company was suitable for the purpose for which it was required and that the railroad company was entitled as matter of law to have the "actual cost" of the work done by it allowed, but he found as facts that at the time the railroad company permitted the substitution of the unscreened gravel no circumstances existed that made such substitution necessary, and that in giving such permission to the contractor the railroad company failed to exercise reasonable care and diligence to protect the contributing parties from paying the full contract price for an inferior and less costly material. The auditor found that the difference between the value of the concrete contracted for and that furnished was about $3,500 and that the part of this to be paid by the contributing parties would be about $2,000, and found that this amount should be disallowed. *Held,* that on the facts found by the auditor his rulings and decision were right.

In proceedings under a special statute for the abolition of certain grade crossings, which incorporates by reference, except as otherwise provided, the provisions of St. 1890, c. 428, and acts in amendment thereof, the report of an auditor appointed under St. 1890, c. 428, § 7, has the force and effect of the report of a master in a suit in equity, and where the evidence is not reported the findings of such an auditor cannot be set aside unless they are plainly inconsistent with facts found by him and are clearly wrong.

MORTON, J. By St. 1900, c. 387, as supplemented and amended by St. 1902, c. 508, St. 1903, c. 115, and St. 1905, c. 422, provision was made for the abolition of grade crossings in the city of Worcester. By reference, the provisions of St. 1890, c. 428, "An Act to promote the abolition of grade crossings," and acts in amendment thereof and in addition thereto were incorporated into St. 1900, c. 387, except as otherwise therein provided. St. 1900, c. 387, § 8. The appointment of an auditor to whom from time to time should be submitted "all accounts

of expense," and who should audit the same and make report thereon to the court was thus provided for. St. 1890, c. 428, § 7. The questions in this case,* arise upon the forty-eighth report of an auditor so appointed. They relate to certain items submitted by the Boston and Albany Railroad Company. The material facts relating to these items as found by the auditor are briefly as follows.

Amongst other things required of the Boston and Albany Railroad Company by the decree of the Superior Court confirming the report of the commissioners was the construction by it of "suitable retaining walls and masonry" for the railroads and tracks affected by the proposed changes. In the performance of the work thus imposed upon it the Boston and Albany Railroad Company entered into contracts for the construction of concrete masonry. The prices contracted for and paid by it and for which it claimed to be allowed as items of expense were based on the use of certain definite proportions of cement, sand and stone, the last to be either broken stone or screened gravel.

The contracts were entered into about the middle of June, 1911, and at that time the contractors had not sufficient facilities to screen the gravel required, and the Boston and Albany Railroad Company through its chief engineer permitted the use of unscreened or "run of bank" gravel until a sufficient screening plant could be installed. "Run of bank" gravel was used in the concrete masonry up to August 7, when the use of broken stone was begun, and continued till a screening plant was completed and placed in operation on September 13. Neither of the contributing parties knew of the contracts, if that is material, or of the use of "run of bank" gravel before August 7. The use of "run of bank" gravel resulted in a product somewhat inferior in quality and less in cost to the contractors than the concrete called for by the contracts. The difference in cost between the material for the concrete contracted for and that furnished fairly represented the difference in value between the concrete contracted for and that furnished, and the auditor found such difference to be $3,489.46, of which the proportion of the Commonwealth, and the New York, New Haven, and Hartford Railroad Company and the city of

---

* Reserved and reported by *Pierce*, J., for determination by this court.

Worcester is $2,063.93; and they contend now, as they did before the auditor, that it is not a proper item of expense and should not be allowed. The auditor so found and ruled subject to various objections and exceptions on the part of the Boston and Albany Railroad Company, and the correctness of that ruling is the principal question before us. There are one or two subsidiary matters to which we will refer later.

The auditor found that the Boston and Albany Railroad Company had not been guilty of any dishonesty or bad faith towards any of the other parties to the proceedings; that the masonry provided by it was amply sufficient in kind and amply strong and sufficient in quality for the purposes for which it was intended with a suitable margin for safety; that the price agreed to be paid for it was reasonable if not low; that the variance from the contract was not intended to be permanent but merely as a temporary expedient to hasten the beginning and completion of the masonry contracted for; and that taking the entire work done under the contracts and determining the loss or gain with reference to that part of the work in which the unscreened gravel was used, the contractors made no profit as the result of the use of the unscreened gravel.

He also found that at the time when the railroad company allowed "run of bank" gravel to be substituted for screened gravel no circumstances existed which made such substitution necessary; that when consenting to the variance from the contract it failed to protect the contributing parties from paying for an inferior and less costly material the price contracted to be paid for the material specified in the contract, and that it allowed the substitution to be continued for a time and an amount of masonry to be furnished under the contract as varied which called upon the contributing parties to pay a substantial sum more than the concrete was worth; and that it did not exercise reasonable care and diligence to protect the interests of the contributing parties.

The Boston and Albany Railroad Company contended that, the auditor having found that there was no dishonesty or bad faith on its part and that the masonry was suitable for the purpose for which it was required, it was entitled as matter of law to have the actual cost of the work done by it allowed. But the auditor ruled

in effect that, while the railroad company could construct or contract for any kind or quality of concrete masonry that was suitable for the purpose for which it was required, it could not contract for one kind or quality at a fair and proper price and subsequently, without reasonable cause, permit the substitution of an inferior and less costly kind of masonry at the same price, but was bound, as regarded the contributing parties, to use reasonable care and diligence in seeing that the material furnished was worth the contract price.

By statute "the total actual cost of the alterations, including in such cost the cost of the hearing and the compensation of the commissioners and auditors for their services, and all damages," is to be divided in certain proportions amongst the parties liable. St. 1890, c. 428, § 3.  R. L. c. 111, §§ 149–160.  Sts. 1906, c. 463, Part I, §§ 29–45; 1908, c. 390.  The decree of the Superior Court follows the statute.  Cases involving questions whether certain items were or were not included in "the total actual cost" of the abolition of grade crossings have been before this court, and the meaning of that phrase has been considered.  *Boston & Albany Railroad* v. *Charlton,* 161 Mass. 32.  *Mayor & Aldermen of Newton, petitioners,* 172 Mass. 5.  *Providence & Worcester Railroad, petitioner,* 172 Mass. 117.  *Selectmen of Norwood, petitioners,* 183 Mass. 147.  *Selectmen of Westborough, petitioners,* 184 Mass. 107.  *Old Colony Railroad, petitioner,* 185 Mass. 160.  By "the total actual cost" is meant the whole amount expended on the entire work with such allowances and deductions, if any, as should be made in order to arrive at a correct result.  See *Boston & Albany Railroad* v. *Charlton, supra; Mayor & Aldermen of Newton, petitioners, supra.*  The cost is actual cost as distinguished from estimated price or market value and excludes anything in the nature of a profit or return on the capital invested.  *Mayor & Aldermen of Newton, petitioners, supra.*  The fact that in the performance of work required of it one of the parties has honestly and in good faith made certain expenditures, does not of itself without anything more constitute the expenditures so made items of expense which the auditor is bound to allow.  In a sense the alterations required constitute a common undertaking, and each of the parties is not only required to deal honestly and in good faith with all the other parties, but is also required to exercise

due care and diligence to protect their interests in regard to all matters to the cost of which they are required to contribute.

The question is not whether the masonry was up to the standard required by the decree, or was suitable for the purpose for which it was intended, or whether the contractors, taking the work as a whole, did or did not make a profit by the use of "run of bank" gravel, but whether the railroad company discharged its duty towards the contributing parties, and whether, assuming that it could depart from the contracts and specifications, it has paid as between it and them no more for the masonry than in the exercise of due care and diligence, taking all the circumstances into account, it ought reasonably to have paid. Any other rule would or might take away incentives to proper business dealings and methods which otherwise would exist.

In the present case the auditor has found that due care and diligence were not exercised by the Boston and Albany Railroad Company to protect the interests of the contributing parties, and that when the variance from the contract was permitted and the use of "run of bank" gravel was allowed, no circumstances existed which made such substitution necessary. The report of the auditor has the force and effect of the report of a master. *Selectmen of Norwood, petitioners, supra.* The evidence, except upon a single point, is not reported, and the findings of the auditor cannot be set aside unless plainly inconsistent and clearly wrong (*Eddy* v. *Fogg*, 192 Mass. 543), which we do not think they are.

The evidence in regard to the finding by the auditor, that no circumstances existed which made the substitution of "run of bank" gravel necessary, is before us. If the auditor had found that circumstances did exist which rendered the substitution necessary, we should not have been able to say that the finding was wrong, nor can we on the other hand say that his finding that no such circumstances did exist was plainly erroneous. The question is one on which different minds might come to different conclusions, with the result that neither conclusion can be pronounced plainly wrong. It follows that the ruling and finding of the auditor on the principal question at issue was correct.

The contracts were properly admitted in evidence by the auditor for the purpose for which he admitted them, which was to

show the quality of the concrete masonry which had been fixed upon by the railroad company.

*Exceptions overruled and report confirmed.*

*Decree accordingly.*

*F. B. Greenhalge,* Assistant Attorney General, for the Commonwealth, was not called upon.

*E. H. Vaughan & C. S. Anderson,* for the city of Worcester, also were not called upon.

*R. A. Stewart,* for the defendants.

